## BURCHINELL v. BUTTERS.

1. HUSBAND AND WIFE—GIFTS.

A husband cannot, as against his creditors, by gift, invest his wife with the ownership of his household goods or horse and carriage.

2. SAME—PRESUMPTION.

When the husband and wife are living together, the presumption is that the household furniture, etc., is the property of the husband.

3. PLEADING—EVIDENCE.

Plaintiff in replevin against the officer who had levied upon the goods alleged ownership and right of possession thereof. Defendant answered by a general denial. *Held*, that evidence showing that plaintiff's title was by gift from her husband, that the gift was of a class of property not included within the statutory enumeration of articles which may be presented by a husband to his wife, and that the husband was insolvent at the time of making the gift, was admissible to establish plaintiff's want of title.

4. MEASURE OF DAMAGES.

The measure of damages for a wrongful attachment of chattels by an officer is the value of the property at the time of seizure.

*Error to the District Court of Arapahoe County.*

THIS was an action of replevin brought by the defendant in error against the plaintiff for the recovery of chattels (household furniture, a piano, etc.) taken by the plaintiff in error, as sheriff, by writ of attachment, in a suit against Sara L. Butters and Henry A. Butters, defendant in error (plaintiff), claiming to be the owner of the chattels.

Henry A. Butters and Sara L. Butters were husband and wife, and, while that relation existed, bought a house. The title was made to the wife, and husband and wife jointly executed notes for the purchase money. The house was furnished with the goods in controversy in this suit, the property of the wife, Sara L. Husband and wife jointly occupied the house and used the furniture until the death of Sara L. Subsequently, the husband remained in possession and occupation, assisted by a housekeeper. Sara L., as far as appears by the record, died intestate, and no administration of her estate was had, the indebtedness upon the joint notes remaining unpaid. While affairs were in this condition, on July 6, 1891, Henry A. married defendant in error, installed her in the house, and attempted, as shown by the evidence, to invest her with the ownership of the goods in controversy. Although in some unimportant particulars the witnesses failed to agree, the evidence was substantially the same as rehearsed by those present, and was that, at the wedding breakfast, the husband made the new wife a present of the household goods and the horse and phaeton. "He did not make a speech; just sat there and said she should have the horse and buggy and the household goods. That was all that was said and done about that." In the language of another witness, Mr. Butters said, "that he then and there gave her all the household effects and the horse 'Dick,' and phaeton and harness. These were enumerated. *They had been the property of the former Mrs. Butters.*"

Butters and wife occupied the house, used the furniture.
horse and phaeton until November following, when the wife,
as testified to, had to "go to a lower altitude," left Colorado,
and has not since returned.    Butters remained some time
later, rented the house and furniture, collected the rent, used
horse and phaeton, when he, too, left for a lower altitude, and
has not since returned.

On the 20th day of July, 1892, C. H. McLaughlin sued
out an attachment on two overdue promissory notes of $250
each, made by Sara L. and Henry A. Butters, which was
levied upon the goods in controversy.    At the time of the
levy the goods were in the possession of McLaughlin, plain-
tiff in attachment.

The case was tried to the court; finding and judgment for
the plaintiff (defendant in error) ; and a writ of error sued
out and case brought to this court.

Messrs. BENNET & BENNET, for plaintiff in error.

No appearance for defendant in error.

REED, P. J., delivered the opinion of the court.

Many errors are assigned, several of which it will not be
necessary to discuss.

Upon the trial defendant asked leave to amend his answer
of general denial, after the plaintiff had offered the evidence
in regard to title by gift from the husband, claiming surprise ;
tendered a verified amendment alleging, among others, the
fact that at the time of the alleged gift and pretended trans-
fer of the property, and for some time before, C. H. Mc-
Laughlin was a *bona fide* creditor of the husband, H. A.
Butters, and that he was insolvent at the time of the alleged
gift.    The amendment was denied.    Upon the trial evidence
to establish the insolvency was offered, and refused on the
ground that the answer, being a general denial, the evidence
could not be received ; that *fraud* must be specially pleaded,

etc. The only allegation in the complaint, being that on the date of the levy plaintiff was the owner and entitled to the possession, was fully answered by the general denial. There was nothing to disclose the origin or source of title in the complaint. Consequently it could not be traversed.

Section 3007, Mills' Stats. (sec. 2266, Gen. Stats.), is as follows: " *What property of married woman remains her own.* The property, real and personal, which any woman in this state may own at the time of her marriage, and the rents, issues, profits and proceeds thereof, and any real, personal or mixed property which shall come to her by descent, devise or bequest, *or the gift of any person except her husband*, including presents or gifts from her husband, as *jewelry, silver, tableware, watches, money and wearing apparel*, shall remain her sole and separate property, notwithstanding her marriage, and not be subject to the disposal of her husband, or liable for his debts."

The property in controversy, it will be seen, is not such that it can be made the sole and separate property of the wife by a gift from the husband, and, to maintain her right, some title known to the law must have been established. Where husband and wife are living together, the legal presumption is that such property as that in controversy is the property of the husband. *Allen v. Eldridge*, 1 Colo. 288. And where the wife goes to a lower altitude, leaves the property in the full possession of the husband, who exercises full control, and fails to assert title, the presumption is stronger.

Any competent proof to show the pretended title invalid, or, in other words, to show that the plaintiff was not the owner, was admissible under the pleadings, and when the evidence disclosed a supposed title by gift of property of a character not allowed by statute, the testimony of the insolvency of the husband prior to the gift and at the time was clearly admissible to establish want of title. It was not as supposed by the learned judge a question of fraud that should have been specially pleaded. If, at the time of the attempted gift, the husband was insolvent, no title could

pass by the gift, and the evidence under the issue. If the learned judge supposed or believed it to be inadmissible, the question of amendments being almost entirely in the discretion of the court, to refuse the amendment and proof was an abuse of discretion.

A fundamental trouble was the lack of ownership of the property with which the husband attempted to endow the new wife at the wedding breakfast. It is shown by the evidence that it was the property of the former wife. The title to the house was in her; remained so until sold out on the trust deed, after her death. There was no will nor administration. The attachment was sued out on the joint notes of the husband and former wife; consequently were the debts of the deceased wife. In the absence of children, the husband, as survivor, succeeds to the wife's estate; but such estate is what remains after paying the wife's debts,—the balance. If a wife dies owning separate and individual property, also owing debts, the property, like that of any other individual, is liable for such debts as in this case, and the generosity of the husband unavailing, from the simple fact that he had no title.

Another error was in the measure of damage. The court gave judgment for $1,500, the whole amount claimed. The proper inquiry was the value of the property at the time of the seizure. Several witnesses fixed it at from $700 to $800. Witnesses for plaintiff put it at $1,500, not on the basis that the goods were worth that at a fair valuation, or would bring that, but upon the theory that it would cost that to replace them. The latter estimate was adopted by the court. The cost of replacing them might perhaps have been one method of arriving at the value, but it must have been of the same kind of goods that had been in use for the same length of time and in the same condition, not of new goods.

By reason of the error in regard to the proper measure of damage, the judgment was excessive. For the reasons given the judgment must be reversed and cause remanded.

*Reversed.*