Thomson, P. J.
Replevin by J. L. Rachofsky and B. L. Rachofsky, copartners, doing business as Rachofsky & Co., to recover goods and chattels,'the ownership and right to the possession of which the plaintiffs averred to be in them, and which, as alleged, were wrongfully detained from them by the defendant, C. C. Benson.
The defendant, who was the sheriff of La Plata county; denied ownership or right of possession in the plaintiffs, and alleged that the goods and chattels were the property of one Harry Rachofsky, and were in the possession of the defendant, as sheriff, by virtue of the levy upon them by him of an execution issued on a judgment recovered against Harry Rachofsky.
*174 The defendant having died, his administratrix, Minnie C. Benson, was substituted for him.
At the trial, upon the evidence adduced by the plaintiffs, the court, on motion of the defendant, entered judgment of nonsuit, and the plaintiffs appealed.
The evidence was that the plaintiffs were partners ; that J. L. Rachofsky and’ B. L. Rachofsky constituted the firm; and that at and before the date of the levy, the firm were the owners and in possession of the property, which was a stock of merchandise. It was also disclosed by the evidence that Harry Rachofsky had been, for a time, the manager of the firm’s business, and worked on a salary; that B. L. Rachofsky was his wife, and resided in New York City; and that J. L. Rachofsky, the other partner, resided in Boulder, in this state. There was no evidence from which it might be inferred that the title of the firm was tainted with fraud, or that the interest of B. L. Rachofsky was not bona fide.
By the act concerning married women, approved February 12, 1874 (Mills’ Ann. Stats., secs. 3019. 3020, 3021), in matters pertaining to business, all disabilities which coverture had formerly imposed upon the wife, were removed; and she now stands upon an exact equality with her husband. She may make contracts, carry on trade or business, and sue and be sued, as if she were sole. In Wells v. Caywood, 3 Colo. 487, it is said that this is essentially an enabling statute, and as such must be liberally construed to effectuate the purpose of its enactment ; that it asserts the individuality of the wife, and emancipates her, in the respects within its purview, from the condition of thraldom in which she was placed by the common law; that, under it, whatever incidents and privileges attach to the dominion of property in the hands of others, attach to it in her *175 hands; and husband and wife are made strangers to each other’s estates. — See also Scott v. Mills, 7 Colo. App. 155.
But counsel for the defendant insist that, as against her husband’s creditors, general proof of ownership of goods in the wife, is in no case enough; but that she must, in the first instance, show the precise facts upon which she predicates her claim of title. So far as Mrs. Raehofsky was concerned, the proof which was made would, in the case of a femme sole, be prima facie sufficient; and in view of the position in which the law has placed married women with respect to their property and business, we do not think a wife is required, in a case like this, to establish her title by evidence different from that necessary in cases where coverture is not involved. If the title of Mrs. Raehofsky was acquired in fraud, of her husband’s creditors, defendant was at liberty to prove the fact; just as lie might have done if the fraudulent claimant had been some person other than his debtor’s wife. But there is no presumption of fraud in either case; and if it existed here the burden was on the defendant to show it. But the defendant did not even cross-examine the plaintiffs’ witnesses on the question. We think, upon the evidence presented, the plaintiffs were the owners and entitled to the possession of the property.
Counsel, however, refer us to Allen v. Eldridge, 1 Colo. 287, and Burchinell v. Butters, 7 Colo. App. 294, as announcing a rule in harmony with their contention, and in disharmony with the views we have expressed. As to the effect of the decisions in those cases, we find ourselves compelled to disagree with counsel. The case of Allen v. Eldridge was decided before the passage of the act of 1874, and while certain disabilities, which were removed by that act, still attached to married women; but the statutory *176 provisions upon which, the decision was based remain in force, and if the questions determined there were the same with those presented here, it would be conclusive of the case before us. But the questions are not the same, and a careful examination of the opinion relied on, discloses nothing which lends support to counsel’s position. The controversy in that case concerned the ownership of certain articles of household use, to which the wife laid claim. There was no evidence of ownership, except that the articles were in the possession of the wife and her husband, who, so far as appeared, were living together; the husband managing and controlling the family affairs. The court said that in such a case there could be no presumption that articles of food, plainly intended for family use, were the separate property of the wife; that the law gave to a married woman the property she had at marriage, or which might come to her during coverture by descent, etc., and such as she might acquire in trade or business; but that there was nothing to indicate that the articles in question came in any of those ways; and that in the absence of evidence to show the separate ownership of the wife, the law would presume that those articles were owned by the husband. This is the extent of the decision. The utmost that can be claimed on account of it, is that some special proof is necessary to show that articles, intended for use by the family, in the possession of the husband and wife, where the two are living together and the husband is in charge of the family affairs, are the separate property of the wife; and inasmuch as the rule was specifically confined to that class of goods, held in that way, the implication is that the court did not regard it as applicable to property acquired in the course of a trade or business conducted by the wife independently of her husband; and that in such a case no more *177 explicit proof of title would be required from her than from any one else.
And that case no more completely fails to sustain counsel’s contention than the other case of Burchinell v. Butters. In the latter case the wife claimed the ownership of a horse and "buggy, and some household goods, in virtue of a declaration made by her husband immediately after their marriage. The goods were the property of a former wife, who had died, and of whose estate no administration was had. The suit was upon two promissory notes, made by the former wife and-her husband jointly. Section 3007, Mills’ Stats., provides that the property, real and personal, which any woman may own at the time of her marriage, and the rents, issues and profits thereof, and any real, personal or mixed property, which shall come to her by descent, devise or bequest, or the gift of any person except her husband, including presents from her husband, as jewelry, silver, tableware, watches, money and wearing apparel, shall remain her sole and separate property, notwithstanding her marriage, and shall not be subject to the disposal of her husband, or liable for his debts. The court decided, first, that the property in controversy was not such as, under the foregoing provision, could be made the sole and separate property of the wife by gift from her husband; second, that if at the time of the attempted gift, the husband was insolvent, no title could pass by the gift; and, third, that the articles did not belong to the husband, but were the property of the deceased wife, and liable for her debts. In the course of the opinion, referring with approval to Allen v. Eldridge, supra, the court said: “Where husband and wife are living together, the legal presumption is that such property as that in controversy is the property of the husband.” This general statement has been selected by counsel as a *178 text for their argument. In view of the questions specifically passed upon by the court, the statement elucidated nothing, and might, perhaps, as well have been omitted; but its application was, in express terms, restricted to the situation described in the opinion, thus excluding a situation such as is presented by the case before us. No two things could be more unrelated than that situation and this; and no two sets of facts could resemble each other less than those existing there and thosé existing here.
It was error to allow the nonsuit, and the judgment must be reversed.

Reversed.