[No. 5225.]

[No. 2844 C. A.]

## AUSTIN ET AL. V. TERRY.

1. **Replevin—Evidence—Sufficiency—Title of Plaintiff.**

In an action of replevin, the plaintiff claimed by purchase from a certain person individually, and the defendant claimed under a chattel mortgage from the same person as administratrix. Held, after reviewing the evidence, that it was insufficient to show the title of the seller individually to the property.—P. 411.

2. **Replevin—Evidence—Admissibility.**

In an action of replevin, the inventory filed by an administratrix is admissible in evidence to show that the property in controversy is the property of the estate, and not of the administratrix individually.—P. 411.

3. **Same.**

In an action of replevin, an order of the county court authorizing an administratrix to mortgage the property in controversy is evidence that it belonged to the estate when the order was granted.—P. 412.

4. **Replevin—Evidence—Presumptions—Burden of Proof.**

In an action of replevin, the plaintiff claimed by purchase from a certain person individually, and defendant claimed under a chattel mortgage from the same person as administratrix. Held, that, the presumption being that the property belonged to the estate rather than to the administratrix personally, and the burden being upon the plaintiff to establish his title, it was incumbent upon plaintiff to show that the property belonged to the person individually.—P. 412.

5. **Sales — Change of Possession — Notice to Strangers — Bona Fide Purchasers.**

The alleged purchaser of certain horses and mules allowed them to remain in the pasture of the seller with nothing to show any change of possession, except his occasional use of them, and also allowed the seller and her employees to drive and work them. Held, that such facts do not show the open, notorious, unequivocal and exclusive possession of the vendee which the law requires, and such sale is invalid as to subsequent mortgagees.—P. 414.

*Error to the District Court of Boulder County.*

*Hon. Christian A. Bennett, Judge.*

Action by W. R. Terry against Esther M. Austin and Shep Madera. From a judgment in favor of plaintiff, defendants appeal.          *Reversed.*

Messrs. ROBINSON & MCHARG, for plaintiffs in error.

No appearance for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was an action by defendant in error against plaintiffs in error in the nature of a replevin. The defendant in error, who was plaintiff below, claimed that he was the owner and entitled to the possession of certain chattels; that they were taken from him by defendants. Mrs. Austin, who is the principal defendant, denies the title and right of possession of the plaintiff and sets up title in herself. Defendant Madera was acting as the agent of defendant Austin in taking the property. Plaintiff relies upon the purchase of the property from Mrs. Hager in her personal capacity, made October 6, 1898. Defendant relies upon a chattel mortgage executed by Mrs. Hager as administratrix of the estate of John H. Hager, the mortgage having been made pursuant to an order in the county court of Boulder county upon a petition of the administratrix.

At the close of the testimony, the defendant moved the court to direct a verdict for the defendants. This request was denied. It should have been granted for two reasons: First, the testimony fails to show that Mrs. Hager had any title to the property at the time of the alleged sale; Second, that the alleged sale was not followed by such immediate and continuous change of possession as is required by the law. Upon the first proposition, the evidence of the plaintiff discloses that the inventory of the personal property of J. H. Hager, deceased, consisted, among

other things, of four mules and ten horses. ·Plaintiff introduced a chattel mortgage made by Mrs. Hager to him upon the following property, with other chattels: Three horse mules and one mare mule, all branded 20 on left shoulder; one large gray horse and his mate, one large bay· horse, and ten head of horses branded 20 on left shoulder. The property in controversy was included in the property above described.

This mortgage was given May 19, 1894. The inventory was filed on the 26th of March, 1894. The plaintiff further testified that, on October 6, 1894, Mrs. Hager came to his house and requested the loan of some more money. He refused to let her have it, because the security was inadequate. He finally let her have $160, on condition that she was to turn over everything to him. He states that he then purchased from her, among other things, the horses and mules described in the complaint. He took a bill of sale which describes the property which was then sold, as 90 tons of alfalfa hay in the stack, 10 tons mowed oats, 252 acres of pasture, 132 acres located south of the road; all of the J. H. Hager homestead pasture north of the county road, 120 acres. This bill of sale was executed at the same time, and was part of the same transaction that plaintiff had with Mrs. Hager on the 6th of October. It will be observed that there is no mention of horses in the bill of sale, although plaintiff testified that he purchased them at that time.

Plaintiff says that the stock taken from his possession was a large bay horse named Sam, a large bay mare named Julia, bay mare named Lady and another branded No. 20, and there were three mules, Mike, Bridget and Jim. It appears that the fourth mule was dead.

That was all of the testimony of the plaintiff concerning the title to the property purchased and the time of its purchase.

Defendants called the plaintiff as a witness, and he testified that he wrote a bill of sale dated April 15, 1895, which was signed by Mrs. O'Brienne upon the same date. This bill of sale is as follows:

"Pella, Col., Ap. 15th, 1895.

"This bill of sale is to say that I have this day sold and delivered to W. R. Terry all of the following goods and chattels consisting of three mules named Mike, Jim and Bridget, together with the following named horses and mares: One mare named Julia, one Lady, one ——, and two black mares and one colt, and one bay part Clydesdale mare, and one bay horse four years old, not named."

Then follows the description of other property, and that is followed by this recital:

"I have received payment in full as follows: One promissory note of six hundred dollars, dated May 14, 1894, and signed by Mrs. J. H. Hager, and secured by mortgage on this property, of which there is at this date unpaid, four hundred and seventy-five dollars, and said note is hereby paid and cancelled by the delivery of this bill of sale and the property hereby described."

On the same day, the plaintiff gave to Mrs. Hager, who was married in the meantime and was then Mrs. O'Brienne, the following writing:

"Pella, Colo., Apr. 15, 1895.

"This is to say that I will defend property bought of Mrs. O'Brienne from all parties whatsoever or from all comers that may attack said property.                    W. R. Terry."

The plaintiff was called upon to testify concerning this last instrument, and he stated that Mrs. O'Brienne was afraid she would be arrested, and wanted him to give her an indemnifying bond. He told her he would not do it, but would defend his own property, and that was the circumstance under which he gave her this paper.

On the 16th day of January, 1895, Mrs. Hager, as administratrix, appeared in the county court of Boulder county and asked permission to mortgage certain personal property to defendant, Mrs. Austin, for the sum of $514. Among the personal property so requested to be mortgaged were three mules, one span of bay mares named Julia and Lady, one bay horse, one roan horse, one bay Clydesdale called Sam, and four bay mares. The court made an order permitting her to mortgage this property. So, it appears, from the plaintiff's own testimony, that the estate owned the same number of mules and horses which Mrs. Hager mortgaged to the plaintiff, and it appears from the defendants' testimony, that Mrs. Hager applied to the county court, as administratrix, for permission to mortgage to the defendant the same property which plaintiff contends was sold to him, and there is no proof that Mrs. Hager, in her own individual right, owned any property of the character involved in this matter. Further, it appears that, notwithstanding the claim of the plaintiff that the property was sold to him upon the 6th of October in consideration of the surrender of the mortgage, the paper writing evidencing such sale and delivery and the agreement to hold Mrs. O'Brienne harmless were not made until April 15, 1895, three months after the execution of the mortgage to Mrs. Austin.

The inventory introduced by the plaintiff was competent evidence to show that the property was parcel of the estate.—2 Wharton on Evidence, § 1121.

The order of the county court authorizing the administratrix to mortgage the property was evidence that it belonged to the estate when the order was granted.

Upon the principle announced in *Allen v. Eldredge*, 1 Colo. 287, the presumption is that the animals belonged to the estate of Mrs. Hager's deceased husband rather than to her individually, she being the administratrix thereof. The plaintiff claiming under Mrs. Hager as an individual and the defendant Austin claiming under her as administratrix, and the burden of proof being upon the plaintiff to substantiate his title, it was incumbent upon him to show that the property was the property of Mrs. Hager, and not of the estate.

Second: As announced in *Cook v. Mann*, 6 Colo. 21:

"The vendee must take actual possession and the possession must be open, notorious and unequivocal, such as to apprise the community or those who are accustomed to deal with the party, that the goods have changed hands, and that the title has passed out of the seller into the purchaser."

The same doctrine has been announced in many subsequent cases, including: *Wilcox v. Jackson*, 7 Colo. 521; *Bassinger v. Spangler*, 9 Colo. 175; *Sweeney v. Coe*, 12 Colo. 485; *Atchison v. Graham*, 14 Colo. 217; *Allen v. Steiger*, 17 Colo. 552; *Burchinell v. Weinberger*, 4 Colo. App. 6; *Bank v. Kavanagh*, 7 Colo. App. 160; *Israel v. Day*, 17 Colo. App. 200.

The proof in this case shows that this rule was not complied with. Plaintiff contends that he purchased these horses and mules on the 6th of October; that, at the same time, he bought Mrs. Hager's pasture, some hay, and some mowed oats, and other feed; that the horses and mules were permitted to run in this pasture, with nothing to show that there was

any change of possession. He says that he used these animals part of the time, and part of the time they were in the pasture. He did not use much of the stock until in November, and he permitted Mrs. Hager to use the stock, and plaintiff's employees used it. He states further that he let Mrs. Hager have the animals to work some, on the condition that she was to feed them well; and she worked them, operating a hay baler. She worked the mules for four or five weeks. Plaintiff represents that the animals involved in this action were kept in the pasture on the Hager ranch.

James Bratton, one of the plaintiff's witnesses, testified that he was an employee of the plaintiff during the winter of 1894-95; that he knew the stock described in the complaint; that he worked some of the stock, and that it was used by Mrs. O'Brienne's husband, Mrs. O'Brienne being the same person as Mrs. Hager, who is said to have sold the stock; and the stock was used by the O'Briennes and kept at the Hager ranch.

Geo. Bratton, a witness for plaintiff, says that, in the fall and winter of 1894-95, he was working for Mrs. Hager. He knew the stock in controversy, and while working for her he worked the stock. He continued to use the stock occasionally up to the time Mrs. Hager and Mr. Terry had their final settlement on the 15th of April. He used the stock in baling hay away from the farm.

Mrs. Austin, on her own behalf, testified, and her testimony is not denied, that she saw the animals specified in the complaint during the spring of 1895, in Mrs. O'Brienne's possession. She never saw them in any one else's possession except Mrs. O'Brienne's, she saw them in her possession every time she went over there, and every time she saw her. Mrs. Austin

said Mrs. O'Brienne was constantly driving them; that she worked them on the ranch.

The record in this case does not disclose the open, notorious, unequivocal and exclusive possession of the vendee which the law requires, and the court should have instructed the jury to return a verdict for the defendants.

The judgment of the district court will be reversed.                                   *Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GODDARD concur.