# Richmond

## Sarah J. Ward v. Grace A. Ward.

January 8, 1940.

Record No. 2120.

Present, Holt, Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

*Nottingham & Nottingham* and *Sarah B. Carter*, for the appellant.

*DeJarnette & DeJarnette*, for the appellee.

GREGORY, J., delivered the opinion of the court.

On April 13, 1935, Sarah J. Ward, the appellant, shot and killed her husband, Thomas C. Ward. She was indicted for the homicide, tried and acquitted by a jury on her plea of self-defense. Under Code section 5273 she is the sole distributee of Thomas C. Ward, there being no children of the marriage.

The estate of the decedent was committed to The Citizens National Bank of Orange for settlement and it has $973.87 which was paid to it by certain insurance companies which had policies on Ward's life. Two-thirds of the insurance was payable to the wife, the appellant, and the remaining one-third was payable to his estate.

Grace A. Ward, the mother of the deceased and now the appellee, instituted a suit against the widow, Sarah J. Ward, and the administrator, alleging that Sarah unlawfully killed her husband to obtain his estate and thereby forfeited any interest she had in the estate in the hands of the administrator (see Code section 5274), and that she (Grace A. Ward), being the next of kin, is entitled to the entire estate.

The cause was heard *ore tenus* by the court, which decreed that the killing was not in self-defense, and not justifiable or excusable, but was unlawful, and that "Sarah J. Ward thereby forfeited all her right and interest in and to the insurance money in the hands of the said administrator." The administrator was directed to pay the money over to the mother, Grace Ward.

Under Code section 5273, the widow Sarah Ward is entitled, as the sole distributee, to the entire estate unless she

has forfeited her right under Code section 5274, which provides: "No person shall acquire by descent or distribution, or by will, any interest in the estate of another whom he has killed in order to obtain such interest."

The material allegation in the bill of complaint is that Sarah Ward killed her husband in order to obtain his estate. There must be proof sustaining that allegation, of the character generally required to sustain the charge of fraud.

If Sarah killed her husband to obtain his estate, Code section 5274 would prevent the fulfillment of her purpose.

The evidence discloses that Thomas Ward, when drinking, was unreasonable, violent, wild, and uncontrollable. On account of drink, Sarah had instituted a suit for divorce against him just a few months before the tragedy, but on the advice of Mr. Carter, for whom both parties worked, the divorce suit was abandoned. It was agreed that the wages of Thomas would be paid to Sarah in order to prevent his use of them for drink. They were buying a home, the title to which was in the name of Sarah. One-third of the paid purchase price was paid by Thomas while Sarah had paid two-thirds of it.

On the night of the shooting Thomas had been drinking. Alex Jones and his wife lived with Thomas and Sarah. Jones was a brother-in-law of Thomas. Thomas requested Sarah to cook some fish. She refused and he attempted to strike her, but was restrained by Jones. This was about 11 P. M. Jones threw Thomas on the bed and held him. Sarah realized that there would be trouble, and went to get Mr. Carter, who had helped them in their domestic difficulties on prior occasions. He came to the house and after seeing the belligerent attitude of Thomas he advised Sarah to spend the night with her sister-in-law, which she agreed to do. At this time Jones was holding Thomas and trying to quiet him. Sarah went into the room to get a few things before going and as she did so Thomas knocked the shade off the lighted oil lamp which Sarah held. She then got her things, taking a pistol from under the mattress. It belonged to Thomas and a short time prior to this night

he had threatened Sarah with it. Jones had taken it away from him and had given it to Sarah to hide. Sarah was a small, delicate woman, and was under the care of a physician.

After Sarah reached the home of her sister-in-law she decided to return to her home for her money which she had overlooked. She thought that Thomas might find it and obtain more whiskey. She carried the pistol with her. Matilda Jones, wife of Alex Jones, was standing in the yard as Sarah passed. Matilda testified that Sarah said as she passed: "I am going to shoot every damn person in the house." Sarah said she made no such statement.

Sarah proceeded up the steps to her house. She testified that Thomas ran at her with something in his hand, cursing and threatening her. She said it was impossible to retreat in safety, and that she fired in the dark and killed Thomas in self-defense. The bullets entered the front of Thomas' body, according to the coroner. Jones, who was also in the house, contradicted Sarah. He testified that Thomas had nothing in his hand, that he did not advance on Sarah, threatening and cursing her, and that Sarah shot without warning immediately upon opening the door.

The conclusion of the trial court that the homicide was unlawful is sustained by the evidence. The court evidently rejected the testimony of Sarah in which she detailed the events immediately prior to the shooting, and accepted the testimony of Alex Jones, an eye-witness. From his testimony the court no doubt arrived at its conclusion. However, there is no evidence nor can any reasonable inference be drawn from any of the evidence which justifies the conclusion that Sarah killed her husband in order to obtain his estate or a part thereof.

The trial court was of the view that proof of the unlawful homicide alone would cause a forfeiture of the estate. This is not sufficient. The proof must meet the requirements of the plain and unambiguous language of the statute (Code section 5274). The statute requires that the

killing be done in order to obtain the estate, or an interest therein, of the person killed.

The homicide is surrounded by circumstances which clearly disclose that Sarah did not kill her husband in order to obtain his estate. There is an entire lack of evidence which shows that she had any such design. We think the trial court was in error in finding that Sarah had forfeited her interest in her late husband's estate.

The title to the home stood in the name of Sarah. The evidence shows that Thomas paid one-third of the purchase price. Counsel for Grace contend that there is a resulting trust in this property in favor of the estate of Thomas to the extent of the one-third which he paid. An examination of the decree fails to disclose that this question of the resulting trust was presented to or passed upon by the trial court. The decree is silent on the subject. There was no adverse adjudication which could be made the subject of an assignment of cross-error by Grace Ward.

The decree is reversed and final judgment is here entered in favor of Sarah J. Ward.

*Reversed.*