## No. 16,259.

Smith, Administrator *v.* Greenburg, Administratrix.

(218 P. [2d] 514)

Decided January 23, 1950.   Rehearing denied May 1, 1950.

Messrs. MUNSON & KREAGER, for plaintiff in error.

Mr. RAYMOND M. SANDHOUSE, Mr. FRANCIS L. SHALLENBERGER, Mr. EARL A. WOLVINGTON, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS is a contest between the administrator of a husband's estate and the administratrix of the estates of his wife and their adopted daughter. It began when the administrator of the husband's estate, without seeking determination of heirship in the county court, brought this proceeding directly in the district court seeking a declaration of rights under section 81, article 10, chapter 93, '35 C.S.A. See, also, Rule 57 R.C.P., Colorado. The administrator of the husband's estate, having suffered adverse judgment on some of the points involved, comes here seeking review of those points as will be hereinafter noted.

The deaths of both husband and wife, and also that of their adopted daughter, appear to have occurred early in the morning of August 23, 1946, on the premises of the Milford home in Sterling, Colorado. The body of Mrs. Milford was found lying on a bed in her room with a six inch cut in her neck which had severed the jugular vein and the common carotid artery. The body of the adopted daughter, Lois Ruth, age fifteen, was found on the floor in her bedroom, and showed a cut on the left side of the neck. The husband, Charles D. Milford, was found dead from monoxide poisoning in the garage. His pajama-clad body was in a sitting position behind the steering wheel of his car. A small axe or large hatchet was found in the bathroom of the home.

In the district court trial, defendant asked for a jury to determine the order of deaths. After listening to the conflicting testimony of numerous witnesses, none of whom could speak from personal knowledge of the situation and the majority of whom were doctors, the jury, in answer to the three interrogatories addressed to them, found that Ethyl V. Milford died first, Lois Ruth Milford died subsequent to her mother, and that death came to Charles D. Milford after the deaths of the other two.

Opposing counsel entered into the following stipulation:

"To shorten the taking of evidence in this case, it is hereby stipulated between the parties that Charles D. Milford, and his wife, Ethyl Vinnie Milford, and their adopted daughter, Lois Ruth Milford, were living and residing together in Sterling, Colorado; and that on August 23, 1946, Ethyl Vinnie Milford, the wife, came to her death by reason of wounds inflicted upon her by Charles D. Milford:

"And that the adopted daughter, Lois Ruth Milford, came to her death on or about the 23rd day of August, 1946, by reason of wounds inflicted upon her by Charles D. Milford:

"And that Charles D. Milford, on or about the 23rd day of August, 1946, came to his death by carbon monoxide poison inflicted upon himself with suicidal intent.

"It is further stipulated that there was no prosecution, or conviction, of the said Charles D. Milford by reason of the matters hereinabove stipulated.

"Dated this 5th day of May, A. D. 1948."

The finding of the coroner at the inquest does not appear in the record, but we assume from the briefs that the local peace authorities treated this case, as opposing counsel have done in their stipulation, as one of two murders and a suicide—the two murders having been committed by the suicide.

Property of an approximate value of $30,000 is involved. The trial court made findings and entered judgment respecting the various types of property. The specifications of error will be discussed under the various types of property involved.

### Insurance Policies.

■ Two fraternal insurance policies, totaling $1,500, insured the life of Ethyl V. Milford in favor of Charles D. Milford as beneficiary. The adopted daughter, Lois Ruth, was insured by a New York Life Insurance Company policy in the amount of $1,000, the beneficiaries being Charles D. Milford and Ethyl V. Milford, share and share alike or to the survivor, and by a fraternal insurance policy of $800 which named Ethyl V. Milford as beneficiary. On the basis of Charles D. Milford having caused the deaths of Ethyl V. Milford and Lois Ruth Milford, the trial court ordered that the administrator of his estate was barred from claiming any benefits under the above mentioned policies; that the proceeds of the policies insuring the life of Ethyl V. Milford belonged to her estate, and the policies insuring the life of Lois Ruth Milford belonged to her estate.

Counsel for the administrator of the husband's estate concede that this is a proper disposition of the proceeds of the insurance policies. Their statement reads: "We

believe the law to be fairly well settled that where the beneficiary named in a life insurance policy causes the death of the named insured, he is barred from taking any of the proceeds. The same rule is likewise applicable in the case of a devisee or beneficiary causing the death of a testator."

Both parties being agreed on the trial court's resolution of this phase of the case, its judgment affecting the proceeds of life insurance policies involved herein is hereby approved.

Property Held in Tenancy in Common.

The home property in Sterling was held by Mr. and Mrs. Milford, as tenants in common. Prior to their deaths they entered into a contract for the sale of the property and a balance of $5,921.84 was paid after their deaths. The trial court found, in respect to the proceeds from the Sterling home that neither the said Charles D. Milford, nor his personal representatives, nor his heirs, acquired any further or greater interest in the funds derived from the sale of said property by reason of the death of Ethyl V. Milford.

Section 1, chapter 176, '35 C.S.A., being our statute of descent and distribution, reads as follows:

"Whenever any person having title to any real estate or property having the nature or legal character of real estate, or personal estate, undisposed of or not otherwise limited by marriage settlement, shall die intestate as to such estate, it shall descend and be distributed in parcenary to his kindred, male and female, * * * and in the following course and manner, namely: If such intestate leave a husband or wife and children, or the descendants of children him or her surviving, one-half of such estate shall descend to such surviving husband or wife, and the residue thereof to such surviving children and descendants of children as hereinafter limited;

* * *

"Second. If there be no children, nor their descendants, then to his father and mother share and share

alike; if there be no father, then to his mother; if there be no mother, then to the father; if there be no father or mother, then to the brothers and sisters, * * *." Under this statute the property of Ethyl V. Milford, intestate, which she held as tenant in common and died so seized prior to the deaths of her husband and daughter, descended one-half to her husband and one-half to her adopted daughter. The property of the adopted daughter upon her death then became the property of Charles D. Milford, who, by the findings of the jury, survived both his wife and his adopted daughter. The statute originally made no exception concerning the manner of the death of an intestate. Later, however, the legislature passed an act, chapter 195, Session Laws 1923, now appearing as section 12, chapter 176, '35 C.S.A., which provides: "Hereafter any person convicted of murder in the first degree or second degree as having caused the death of any other person either as principal or accessory, shall not take, either by descent, devise, inheritance or any other manner, any of the estate, real or personal of deceased." The trial court, in its findings and judgment, makes no reference to this section and adopted the following reasoning in support of its position: "This court has chosen to follow the rule that no one shall be permitted to profit by his own wrong, and that the law will not allow one to increase his own holdings, or expand his estate, by accomplishing the death of another."

We reverse the judgment of the trial court in respect to the property held in tenancy in common, because we believe that the legislature already has fixed the standards and rules to be applied in the situation confronting us. We are confirmed in this position by a study of the authorities from other jurisdictions, a summary of which appears in 26 C.J.S. 1055: "According to the majority view, the operation of a statute of descent is not affected by the fact that the death of the intestate was caused by the heir apparent in order to obtain the in-

heritance at once, and therefore an heir who causes or procures the death of the intestate in order that he may inherit the estate at once is not disqualified from taking in the absence of a statute, expressly disqualifying him. There is, however, a strong minority view to the contrary, based on the theory that a person should not profit from his own wrong; and it is said that this view displays a tendency to become the majority view. To meet the difficulties arising in such a case, several states have enacted valid statutes intended to prevent a person who has feloniously caused the death of decedent from inheriting or receiving any part of the estate of decedent; *but such a statute must be strictly construed and in some situations is held not applicable. A statute disqualifying one who has been convicted of the murder of deceased does not apply in the absence of such conviction, as where there has been a conviction of manslaughter only, or the person who committed the homicide was insane at the time or committed suicide shortly thereafter.*"

Some of the cases that support the italicized portions of this statement include: *Holloway v. McCormick,* 41 Okla. 1, 136 Pac. 1111, 50 L.R.A., N.S. 536; *United States v. McCarty* (10th Cir.), 144 F. (2d) 341, 342; *Wilson v. Randolph,* 50 Nev. 440, 264 Pac. 697; *Kirby's Estate,* 162 Cal. 91, 121 Pac. 370, 39 L.R.A., N.S. 1088, Ann. Cas. 1913 C, 928; *Bruns v. Cope,* 182 Ind. 289, 105 N.E. 471; *Ward v. Ward,* 174 Va. 331, 6 S.E. (2d) 664, 139 A.L.R. 505.

## Property Held in Joint Tenancy.

Mr. and Mrs. Milford had also entered into a contract to purchase real estate in Longmont and had made a down payment of $5,500. The wording of the contract was not definitely known at the time of the trial, but counsel state it has since been ascertained that it was a joint tenancy and they have agreed that this contract shall be treated as such. After the deaths, and with pro-

bate court approval and acquiescence of all parties, a refund of $4,000 was obtained.

Counsel stipulated that $7,000 maturity value in United States war bonds, a checking account in the Security State Bank of $7,558.21, and a deposit with the Sterling Community Federal Credit Union of $112.97 were owned in joint tenancy by Charles D. Milford and Ethyl V. Milford, with right of survivorship.

In respect to this property the trial court held that the estate of Charles D. Milford could not be in any manner enhanced by the property of his victims. It recognized that during their lives each joint tenant had the right to appropriate the entire corpus of the property held in joint tenancy, but it took the position that this equality of authority should be considered as equality of participation; that the husband's estate could not be deprived of such interest as he possessed in the joint tenancies, but that neither could it be increased by reason of his having killed the other joint tenant. Reliance was placed upon the case of *Bierbrauer v. Moran*, 279 N. Y. S. 176, where, husband and wife being joint tenants, the husband killed his wife and then committed suicide. In that case the court held that death should be considered as being simultaneous and awarded a half interest to the estate of each spouse. Although realizing that the findings of the jury in the instant case were to the effect that the deaths were not simultaneous, the trial court followed the disposition of the property made in *Bierbrauer v. Moran, supra*, and ordered that the above mentioned personal property held in joint tenancy should "be treated and considered as being held by Charles D. Milford and Ethyl V. Milford as tenants in common, each having at the time of their death an undivided one-half interest in said bonds and funds." It is to this finding and order that counsel for plaintiff in error most seriously object.

This point involves section 45, chapter 18, '35 C.S.A., which reads as follows: "When a bank deposit in any

bank or trust company transacting business in this state has been made, or shall hereafter be made, in the names of two or more persons payable to them or to any of them, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons whether the other or others be living or not, and the receipt or acquittance of the person so paid shall be a valid and sufficient discharge to the paying bank from all said persons, their heirs, executors, administrators and assigns; and such deposit shall be deemed to be owned by said persons in joint tenancy with the right of survivorship; * * * [L. '21, p. 559, §1; C. L., §2692.]"

Sections 17 to 23, inclusive, chapter 92, '35 C.S.A., as amended (Laws 1939, §§1 to 3, inclusive, page 287; Laws 1941, §§1 to 3, inclusive, pp. 594, 595), as well as other sections of the statutes elsewhere mentioned in this opinion, contain provisions dealing with joint tenancy in other types of property.

United States Treasury Department regulations governing United States Savings bonds, Department Circular No. 530, page 14, dated February 13, 1945, under which the $7,000 United States war bonds were issued, provides that:

"(a) During the lives of both co-owners the bond will be paid to either co-owner under his separate request without requiring the signature of the other co-owner; and upon payment to either co-owner the other person shall cease to have any interest in the bond."

"(c) If either co-owner dies without the bonds having been presented and surrendered for payment or authorized reissue, the surviving co-owner will be recognized as the sole and absolute owner of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor."

"(e) If a surviving co-owner who becomes solely entitled to the bond under the provisions of sub-section (c) of this section, dies without having presented and

surrendered the bond for payment or authorized re-issue, the bond will be considered as belonging to his estate and will be paid or reissued accordingly."

We have set forth a part of our Colorado statutes dealing with joint tenancies and the federal regulations concerning the United States war bonds held in joint tenancy to show that there is no exception to prevent payment to a surviving tenant on account of his misconduct toward the tenant who has predeceased him. Counsel for the administratrix of the wife's estate argue that the same disposition should be made of the property in joint tenancy as in the case of the proceeds of the life insurance; that both are matters of contract.

It is true that "Under the early common law, particularly in England, joint tenancies were favored," 48 C.J.S., §2, Joint Tenancy, page 912; but the same authority also points out that modern American doctrine has generally been opposed to the creation of such estates, with the result that virtually every state has enacted legislation which sets up a presumption against the creation of joint estates and in favor of tenancies in common. *Stambaugh v. Stambaugh,* 288 Ky. 491, 156 S. W. (2d) 827. In conformity with this trend, joint tenancy in Colorado is strictly limited and its very existence circumscribed by statute. Section 4, chapter 40, '35 C.S.A. But in spite of this limitation, the legislature has not seen fit, once a joint tenancy has been created, to place a condition or limitation upon the right of the surviving tenant to the whole interest in the joint tenancy property. So that we believe it may properly be said that the creation of joint tenancies and the disposition of property thereunder is dictated as strictly by pertinent legislation as is the devolution of property under the laws of descent and distribution. As this court said in *Houle v. McMillan,* 83 Colo. 216, 263 Pac. 409, with reference to bank deposits held in joint tenancy: "We see no escape from the conclusion that these de-

posits were 'in the names of' and 'payable to' *deceased and defendant* and that the status of such a deposit is fixed by the statute in question."

■ ■ The insured under a life insurance policy, and the maker of a will, both have the right to change their respective beneficiaries as often as they see fit. In a joint tenancy the rights are fixed and vested in the joint tenants at the time of the creation of the joint tenancy under the statute. This principle has been recognized in *Oleff v. Hodapp,* 129 O. St. 432, 195 N. E. 838, 98 A.L.R. 764; *Moskowitz v. Marrow,* 251 N. Y. 380, 167 N. E. 506, 66 A.L.R. 870; *Erwin v. Felter,* 283 Ill. 36, 119 N. E. 926, L.R.A. 1918E, 776; *Wenker v. Landon,* 161 Ore. 265, 88 P. (2d) 971.

■ ■ From the foregoing it will be noted that our position with respect to the properties held either in joint tenancy or tenancy in common is the same, namely: that the legislature has already pre-empted the field and declared the public policy with respect to the disposition of property held either in joint tenancy or descending under the statute of descent and distribution. Thus in *In re Tyler's Estate,* 140 Wash. 679, 250 Pac. 456, 51 A.L.R. 1088, upon which the administratrix for the wife's estate relies, it appears that the state of Washington had no anti-murder statute; and in *De Zotell v. Mutual Life Ins. Co.,* 60 S. D. 532, 245 N. W. 58, upon which the administratrix also relies, the opinion sets forth that many of the states control the matter by statute, including Colorado. (Section 12, chapter 176, '35 C.S.A., supra.) In passing, it should be noted that in both the above-mentioned cases, as well as in *Bryant v. Bryant,* 193 N. C. 372, 137 S. E. 188, 51 A.L.R. 1100, there was a conviction; and in *In re Tyler's Estate, supra,* there also was a finding that the murderer killed his wife so that he could possess himself of her property. In *Walton v. Walton,* 86 Colo. 1, 14, 278 Pac. 780, 784, this court said: " * * * the question of public policy is

for the legislature. When that policy is unequivocally declared the declaration binds the courts." See, also, *McAllister v. Fair*, 72 Kan. 533, 84 Pac. 112, 3 L.R.A., N.S. 726, 115 Am. St. Rep. 233, 7 Ann. Cas. 973; *Hogg v. Whitham*, 120 Kan. 341, 242 Pac. 1021; *Wall v. Pfanschmidt*, 265 Ill. 180, 106 N.E. 785, L.R.A. 1915C, 328, Ann. Cas. 1916A, 674; *Carpenter's Estate*, 170 Pa. St. 203, 32 Atl. 637, 29 L.R.A. 145, 50 Am. St. Rep. 765.

Household Goods.

The trial court's finding in respect to this item reads as follows:

"The record discloses, and it is agreed, that Charles D. Milford and Ethyl V. Milford were living together as husband and wife and possessed certain household goods which, after the death of these parties, were sold for the net sum of three thousand and four dollars ($3,004.00), which money is now on deposit in the registry fund of the County Court of Logan County, Colorado.

"The court finds that Charles D. Milford, at the time of his death, was the sole owner of the household goods used by himself and his wife, and that the proceeds derived therefrom in the sum of $3,004.00 belonged to the estate of Charles D. Milford, deceased."

Although the defendant does not appear to have filed formal cross-specifications of error on this item of property, her counsel in their brief argue that the trial court erred in relying upon *Allen v. Eldridge*, 1 Colo. 287. In that case it was held that where husband and wife are living together, and there is no evidence as to the ownership of provisions and articles of household use, the presumption is that they belong to the husband. Counsel also argue that *Wells v. Caywood*, 3 Colo. 487, has changed this rule. The cases do not support this contention. We find that *Allen v. Eldridge, supra,* is followed in *Burchinell v. Butters*, 7 Colo. App. 294, 297, 43 Pac. 459; that it is recognized and explained in *Rachovsky & Co. v. Benson*, 19 Colo. App. 173, 175, 74 Pac. 655;

and again followed in *Austin v. Terry*, 38 Colo. 407, 88 Pac. 189. It also is cited in 111 A.L.R. 1384, along with cases from other jurisdictions in support of the following statement: "It seems that personal property in the joint possession of husband and wife, or concerning which there is no independent evidence as to which of them is in possession, has generally been presumed to belong to the husband." Nor are we of the opinion that section 7, chapter 32, '35 C.S.A., has changed the principle of law set forth in the above mentioned cases. That section is part of an act concerning chattel mortgages and merely provides that: "No sale or mortgage of household goods used by the family shall be valid unless the transaction is evidenced by an instrument in writing executed by husband and wife jointly, but the provisions of this section shall not apply in case husband and wife are not residing together." See, also, 41 C.J.S. 415.

Accordingly, on this question involving household goods the judgment of the trial court is affirmed.