720 F.2d 15
 Ann M. LUECKE, Individually and as Executrix of the Estate
of Nell S. Simpson, Deceased, Appellant,
v.
MERCANTILE BANK OF JONESBORO, Executor of the Estate of
Samuel L. Simpson, Deceased, Marion S. Curtner,
Mary Laura Beene and R.A. Simpson, Appellees.
MERCANTILE BANK OF JONESBORO, Executor of the Estate of
Samuel L. Simpson, Deceased, Cross-Appellant,
v.
Ann M. LUECKE, Executrix of the Estate of Nell S. Simpson,
Deceased, Cross-Appellee.
 Nos. 82-2253, 82-2254.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1983.
Decided Oct. 31, 1983.
 
 1
 Gann, Fried & Edwards, William, MacGann, Houston, Tex., Barnes, Laney, Gaughan & Singleton, Robert S. Laney, Camden, Ark., Clayton L. Phillips, Jr., Conroe, Tex., for appellant.
 
 
 2
 G.D. Walker, Jonesboro, Ark., for appellees.
 
 
 3
 Before ROSS and McMILLIAN, Circuit Judges, and COLLINSON, Senior District Judge.*
 
 
 4
 COLLINSON, Senior District Judge.
 
 I. Introduction
 
 5
 Plaintiff Luecke and defendant Mercantile Bank of Jonesboro ("Mercantile") cross-appeal from a decision of the District Court[1] in this action involving a wrongful death claim and disposition of the estates of Samuel and Nell Simpson. Issues on appeal are (1) the district court's use of the abstention doctrine; and (2) the calculation of damages in the wrongful death claim. The Court affirms the use of the abstention doctrine, reverses the calculation of damages, and remands to the district court for a redetermination of the wrongful death damages.
 
 
 6
 Samuel and Nell Simpson were husband and wife. On October 7, 1978, Samuel bludgeoned Nell to death with a club in their house in Jonesboro, Arkansas. Samuel then went into his yard, doused himself with gasoline, and set himself afire. He died the next day.
 
 
 7
 Plaintiff Ann Luecke is the daughter of Nell Simpson by a previous marriage and also the executrix of her estate. Defendant Mercantile is executor of the estate of Samuel Simpson. Nell's will left her entire estate to Luecke with the exception of a one dollar bequest to Samuel. Samuel's will devised their residence and all household items therein to Nell, devised some property to his brother, then devised one-third of the remaining estate to Nell, and the residue to his two daughters by a previous marriage.
 
 
 8
 Luecke, a Texas citizen, filed this diversity suit in federal court. 28 U.S.C. Sec. 1332. Her amended complaint included five counts. Count I was for the wrongful death of Nell Simpson. Counts II through V sought to enlarge Nell's estate visa vi Samuel's estate on several theories. Count II alleged Mercantile, as Samuel's executor, failed to "defend the will" in an objective manner. Counts III and IV sought damages for unjust enrichment of Samuel's estate. Count V sought to impose a constructive trust on Samuel's estate for the benefit of Nell's. The district court dismissed Counts II through V by the use of the abstention doctrine and found in favor of Luecke in the amount of $101,100.00 on the wrongful death claim.
 
 II. Abstention
 
 9
 Luecke appeals the dismissal of Counts II through V by arguing abstention was improper. The ultimate remedy sought in each count was to prevent Samuel's estate from increasing in value solely because he lived longer by killing Nell first. The district court chose to abstain because the question of murder of a spouse affecting inheritance by heirs never has been considered in Arkansas.
 
 
 10
 The so-called "abstention doctrine" is a term that refers to several different situations where a court chooses not to consider a case even when it has jurisdiction.
 
 
 11
 The Supreme Court at different times has recognized at least three types of abstention doctrine. One is that a federal court should abstain from a constitutional issue involving state law if it appears that a state court proceeding may resolve the lawsuit on other grounds. E.g., Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). A second form of abstention is the "Our Federalism" doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny, the doctrine being that a federal court must refrain from hearing constitutional challenges to state action when the federal action would intrude upon a state's right to enforce its laws in its own courts. Third, the Supreme Court has stated that "[a]bstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." Colorado River Water Conservation District v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).
 
 
 12
 The third type of abstention properly was invoked in this case. "The area of probate and decedents' estates presents many varied problems. State courts deal with these problems daily and have developed an expertise which should discourage federal court intervention. These local problems should be decided by state courts." Bassler v. Arrowood, 500 F.2d 138, 142 (8th Cir.1974).
 
 
 13
 A precedent by a federal court that either a legal fiction be used to reverse the order of death or that a constructive trust be imposed on the assets of the wrong-doing spouse could affect numerous decedents' estates in Arkansas state courts. A precedent would affect policy in an area of substantial public importance in Arkansas. Indeed, few areas of the law touch as many different citizens as the area of decedents' estate and distribution of assets after a death.
 
 
 14
 Arkansas cases do not provide a precedent. In Wright v. Wright, 248 Ark. 105, 449 S.W.2d 952 (1970), there were two sons, one of whom killed both of his parents. The killer later married, had a child, and was himself killed in an automobile accident. The surviving son later brought a quiet title action against the widow and child of the murderer. The Arkansas court held that the surviving son was entitled to all the property because the murderer would not be allowed to profit from his bad acts. 449 S.W.2d at 954. However, the court expressly declined to comment upon the rights the widow or child would have had if their relationship with the murderer had existed at the time of the crime. Id. All the heirs in this case were living at the time of the tragedy. Furthermore, the murdering son in Wright outlived his parents by several years. In this case the husband attempted suicide immediately after killing his wife and died the next day. He could not have personally benefitted from his wrongful act. Given that fact, and the existence of children of both Samuel and Nell at the time of death, Wright is no precedent for this case.[2]
 
 
 15
 The cases in other states are split regarding the effect of one spouse murdering another. Some have held that a joint tenant who kills his co-tenant should not be limited in acquiring his property rights, notwithstanding the wrongful death. E.g., Smith v. Greenburg, 121 Colo. 417, 218 P.2d 514 (1950); United Trust Company v. Pyke, 199 Kan. 1, 427 P.2d 67 (1967). Other cases have adopted a legal fiction that the victim predeceased the murderer. E.g., Whitfield v. Flaherty, 228 Cal.App.2d 753, 39 Cal.Rptr. 857 (1964); Welch v. Welch, 252 A.2d 131 (Del.Ch.1969).
 
 
 16
 A third position essentially divides the joint estate between the heirs of the victim and murderer, either on the rationale that the legal title devolves on the state of the murderer with a constructive trust imposed upon half for the estate of the victim, e.g., Pannone v. McGaughlin, 37 Md.App. 395, 377 A.2d 597 (1977), or on the rationale that a murder effects a severance of the entirety and thereafter the estates hold the property as tenants in common. E.g., Ashwood v. Patterson, 49 So.2d 848 (Fla.1951). Section 2-803(a) of the Uniform Probate Code (2d ed. 1977) adopts the fiction that the murderer predeceases the victim. Although many states have adopted the Uniform Probate Code, Arkansas has not.
 
 
 17
 There is no Arkansas precedent on inheritance after a murder-suicide. The cases in other jurisdictions are split. The district court refused to speculate on what an Arkansas court would do. This Court gives great weight to opinions of district courts regarding state laws. Rodeway Inns v. Frank, 541 F.2d 759, 767 (8th Cir.1976). Under these circumstances, this Court cannot say the district court abused its discretion in abstaining from issues regarding the disposition of the two estates. Plaintiff Luecke's appeal is denied.
 
 III. Damages
 
 18
 The district court found in favor of plaintiff Luecke on her wrongful death claim in the amount of $101,100.00. Of that sum, defendant Mercantile appeals the award of $25,000.00 for the conscious pain and suffering of Nell Simpson before her death and also the award of $40,600.00 for pecuniary losses suffered by Luecke because of her mother's death.
 
 
 19
 There was no direct eyewitness testimony at trial on the conscious pain and suffering of Nell Simpson. She and Samuel were the only people present at the time of her fatal clubbing. The first person to find Nell, her brother Ross Shaw, testified that she was unconscious but looked like she was still breathing. She was dead by the time a police officer and emergency medical technician arrived on the scene. However, Dr. Robert Stainton, the pathologist who performed the autopsy on the body, stated that in his professional opinion Nell Simpson died from a skull fracture, lived anywhere from one to five minutes after the first blow, and attempted to defend herself from the blows. His opinion was based on the injuries to her hands and fingers, which his experience indicated were the type commonly suffered by a person trying to defend herself.
 
 
 20
 Given Dr. Stainton's testimony, plus the numerous exhibits showing the injuries suffered by Nell Simpson, this Court finds no abuse of discretion by the district court in finding conscious pain and suffering in the value of $25,000.00.
 
 
 21
 Plaintiff Luecke testified that she suffered pecuniary loss because her mother regularly gave her $3000.00 each January and $500.00 on each birthday.
 
 
 22
 The district court took this total of $3500.00 and multiplied it by the 11.6-year life expectancy of Nell Simpson to get a pecuniary loss total of $40,600.00. The apparent intent of the yearly gifts was for Nell gradually to distribute her estate to her daughter while avoiding gift and estate taxes. However, the yearly gifts would only have diminished the estate which Luecke would receive as beneficiary of her mother's will. The evidence shows that Nell was retired and living off her investment income. She was not receiving any kind of salary or wages to enhance her estate. The premature death of her mother only accelerated the time when Luecke would receive the estate. Thus, she suffered no pecuniary loss because of the death since the value of the gifts came from the estate she inherited. This Court holds that the district court erred in its finding of pecuniary loss and reverses the district court on that finding.
 
 
 23
 The Court therefore directs that the award of $101,000.00 in the wrongful death action be reduced by the amount of $40,600.00 and judgment entered accordingly.
 
 
 
 *
 The Honorable William R. Collinson, Senior District Judge, Eastern and Western Districts of Missouri, sitting by designation
 
 
 [1]
 The Honorable Elsijane T. Ray, United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 Likewise, in Smith v. Dean, 226 Ark. 438, 290 S.W.2d 439 (1956), the murdering wife attempted to personally profit from the wrongful act by inheriting the entirety of her dead husband's estate. The facts are distinguishable from the present case since there was no will and the wife survived to attempt inheriting by intestate succession