**Patricia Ann SEIDLITZ, individually and in her capacity as personal representative of the estate of Ernest B. Seidlitz, Plaintiff–Appellant,**

v.

**Sandra K. Becker EAMES and Kenneth R. Becker, Defendants–Appellees.**

No. 85CA0979.

Colorado Court of Appeals, Div. III.

Nov. 12, 1987.

Rehearing Denied Dec. 17, 1987.

Certiorari Denied April 11, 1988.

**776**

Raymond N. Satter, Harvey W. Curtis, Denver, for plaintiff-appellant.

Dill, Dill & McAllister, Robert A. Dill, Tom French, Denver, for defendants-appellees.

STERNBERG, Judge.

Patricia Ann Seidlitz, the widow of Ernest D. Seidlitz (Seidlitz), filed an action seeking a declaratory judgment that she was entitled to the proceeds of two insurance policies on the life of her deceased husband. The court instead awarded the proceeds to Sandra K. Becker Eames, and Kenneth R. Becker (the Becker children) as contingent beneficiaries and successor-owners. Their mother, Katherine M. Becker (Katherine), had killed Seidlitz. Plaintiff appeals, and we affirm.

Before Seidlitz' death, Katherine had been involved in a fourteen and one-half year romantic relationship with him. During the course of this relationship, she purchased two life insurance policies on his life, both naming her as primary beneficiary. The applications asserted a debtor-creditor business type relationship between Seidlitz and Katherine. No issue of insurable interest is presented.

The policy dated October 24, 1974, had a cash value of $100,000 and named Katherine's estate as the contingent beneficiary. The policy of March 3, 1978, had a cash value of $50,000 and named the Becker children as contingent beneficiaries. The Becker children were successor-owners of both policies. Plaintiff had no knowledge of these policies.

Following the shooting death of Seidlitz in 1981, Katherine entered a guilty plea to second degree murder in his slaying, and she was sentenced for that crime. There is no contention that the Becker children were in any way involved in the murder.

Section 15–11–803(3), C.R.S., precludes Katherine from taking the proceeds of either policy. It states:

"A named beneficiary of a bond, life insurance policy, or other contractual arrangement who kills the principal obligee or the person upon whose life the policy is issued and, as a result thereof, is convicted of, pleads guilty to, or enters a plea of nolo contendere to the crime of murder in the first or second degree or manslaughter, as said crimes are defined in sections 18–3–102 to 18–3–104, C.R.S. 1973, is not entitled to any benefit under the bond, policy, or other contractual arrangement, and *it becomes payable as though the killer had predeceased the decedent.*" (emphasis supplied)

Accordingly, Katherine may not claim under either policy because she must be treated as having predeceased Seidlitz.

The trial court awarded the proceeds of both policies to the Becker children, both as contingent beneficiaries and as successor-owners. We find the latter basis for the award to be valid and, thus, find it unnecessary to determine the correctness of the trial court's award to the Becker children as contingent beneficiaries.

Prior to the murder, Katherine directed by way of "owner-designation forms" that the Becker children would be the owners of both policies if certain contingencies were met, namely:

"If Kay M. Becker dies before the Insured, then Kenneth R. and Sandra K. Becker, children of Kay M. Becker, or the survivor, will be the Owners."

And, each policy provided that "if no direct or contingent beneficiaries or further payees survive the Insured, the proceeds ... shall be paid to the owners or their estate." Thus, by the clear language of § 15–11–803(3), C.R.S. and of the insurance policies, the trial court was correct in awarding the proceeds of the policies to the Becker children.

Contrary to plaintiff's argument, public policy does not require a different result. In *Strickland v. Wysowatcky*, 128 Colo. 221, 250 P.2d 199 (1952) the court noted that a statutory right cannot be defeated by the application of a common law principle. Quoting from *Smith v. Greenburg*, 121 Colo. 417, 218 P.2d 514 (1950), the court reiterated the concept that the General Assembly had preempted the field in its declaration of the public policy of the State in the statute.

In *Strickland v. Wysowatcky, supra*, a statute prevented a person convicted of murder in the first or second degree from taking the property of one he had killed. A husband, convicted of voluntary manslaughter in having caused the death of his wife, sought to inherit his wife's estate that consisted entirely of insurance proceeds. The court held that the General Assembly had already fixed the standards and rules to be applied, had declared the public policy of the State, and therefore found itself barred from applying common law principles and judicially interpreting the statute so as to prevent the husband from inheriting his wife's estate. *See also Smith v. Greenburg, supra*, and *Walton v. Walton*, 86 Colo. 1, 278 P. 780 (1929).

Similarly, if we were to engraft onto § 15–11–803(3), C.R.S., a prohibition against the innocent progeny of a murderer receiving, as owners, the proceeds of an insurance policy on the life of the murder victim, we would be indulging in prohibited judicial legislation. Moreover, in no way would public policy be served by rewriting or ignoring the provisions of the statute and of the insurance policies for the benefit of the plaintiff, who paid none of the premiums, and was not in any way designated as a beneficiary or successor owner of the policies. Nor would public policy be served by denying recovery to the Becker children who have no culpability in the murder.

Judgment affirmed.

BABCOCK, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

I respectfully dissent.

Section 15–11–803(3), C.R.S., provides that the beneficiary of a life insurance policy who kills the person under whose life the policy is issued "is not entitled to *any benefit*" under the policy. That statute should be construed to arrive at a just and reasonable result, § 2–4–201(1)(c), C.R.S. (1980 Repl.Vol. 1B), and in my view, such a result may be effected only if the murderer of an insured is prevented from exercising any control in the disposition of the policy proceeds or from receiving any benefits, directly or indirectly, in those proceeds.

Here, Katherine Becker was the owner of both policies. As owner she designated herself the primary beneficiary, designated her estate and her children as contingent beneficiaries, and named her children as successor owners of the policies if she died before Seidlitz. In my view, each of these prerogatives of ownership represents a "benefit" that, under § 15–11–803(3), she forfeited by killing the insured.

Consequently, the result the majority reaches is neither just nor reasonable pursuant to § 15–11–803(3) since it effectuates Becker's intent to benefit her children as a result of her murder of Seidlitz. I do not believe it was the General Assembly's intent to allow a person to designate her progeny as the beneficiaries of a life insurance policy and then to secure those insurance proceeds for her children by killing the insured. *See Bernstein v. Rosenthal,* 671 P.2d 979 (Colo.App.1983) (killer's estate should not benefit from his wrongdoing); *Beene v. Gibraltar Industrial Life Insurance Co.,* 116 Ind.App. 290, 63 N.E.2d 299 (1945) (a life insurance beneficiary who intentionally kills the insured forfeits the benefits of the policy; therefore, his assignee also forfeits the benefits); *Schmidt v. Northern Life Ass'n,* 112 Iowa 41, 83 N.W. 800 (1900); *Equitable Life Assurance Society v. Weightman,* 61 Okl. 106, 160 P. 629 (1916).

I interpret the language of the statute to preclude Katherine Becker's receipt of any benefit from the life insurance including the indirect benefit of designating her children as successor-owners or beneficiaries and thereby enriching her family by providing them with the proceeds. It is irrefutable, in a practical sense, that Katherine Becker's absolute control over the ultimate disposition of the insurance proceeds is a "benefit" within the meaning of § 15–11–803(3).

The plaintiff originally filed wrongful death claims against Becker and the insurance company. Her claim against the insurance company alleged that it knew or should have known it supplied Becker with a motive to kill the insured since she had no insurable interest in his continued existence. The plaintiff agreed to dismiss her wrongful death claim against the insurance company with prejudice and the insurance company agreed to interplead the proceeds.

Thus, the sole issue presented requires us to determine who, between the murderer's children and the victim's estate, should receive the benefit of the policies. Inasmuch as the award of the proceeds to benefit a murderer's children is contrary to the legislative intent of § 15–11–803(3), and since Seidlitz' murder prevented support of his family and any future augmentation of his estate, the proceeds of the policies on his life should inure to the benefit of his estate.

Accordingly, I would reverse the trial court.