No. 14,100.

ELLEMAN *v.* INDUSTRIAL COMMISSION ET AL.

(66 P. [2d] 323)

Decided March 1, 1937.

Mr. ALBERT B. LOGAN, Mr. G. RUSSELL MILLER, Mr. JAMES F. QUINE, JR., for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. LOUIS SCHIFF, Assistant, Messrs. WOLVINGTON & WORMWOOD, for defendants in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is a case brought under the Workmen's Compen-

sation Act of this state, and the plaintiff in error is suing for herself and in behalf of Helen Irene, Mary Evelyn, Geneva Louise and Doris Enola, minor daughters. The action is against the Industrial Commission, Jardine and Knight Plumbing and Heating Company, a corporation, the employer, and Associated Indemnity Corporation, insurer. Judgment below was for defendants in error and the claimant assigns error here.

The matter was twice before the district court of El Paso county. The first time, the court below, not being satisfied with the findings of fact of the commission, sent it back for further consideration and upon its coming back to the district court the findings of the commission were affirmed.

The facts are substantially as follows: Wallace M. Elleman had been employed by the Jardine and Knight Plumbing and Heating Company for approximately two years as a truck driver. In the fore part of February, 1936, he made a trip to Yuma, Arizona, from which place he returned to Colorado Springs on February 2, 1936, with a slight cold and quite fatigued. He rested on the following day and returned to work on February 4, 1936.

His employer had a contract to install a boiler in a school house at Edison, Colorado, and on February 3, 1936, it sent men and the boiler and other equipment in a truck, but they were forced to turn back on account of a blizzard. It was imperative that the boiler be in place for the opening of school on the 5th of February. Elleman driving the truck and accompanied by three other fellow employees succeeded in reaching the Edison school on February 4th. They had been instructed to complete the job before returning. They worked that day and night and a part of the following day, a period of approximately thirty hours before the job was complete. Elleman helped the others in assembling the boiler. His particular job consisted largely in helping to cut a hole through an 18-inch concrete wall at a point directly above his head. While doing so he inhaled more or less dust

which arose from the cutting of the concrete. In order to effect better ventilation the windows in the basement where they were working were opened. The weather was very cold and the only heat they had was from the torches that they were using in their work.

Elleman returned to Colorado Springs on February 5th and was all worn out and retired without eating. However, he got up and reported for work again on February 6th, but was unable to work for the full day and returned home in the afternoon. A physician, Dr. Loub, was called on February 9th, to whose treatment Elleman did not respond and he died on February 14, 1936, of bronchial pneumonia.

The contention of counsel for plaintiff in error was that there was no evidence upon which the commission and the lower court could base their judgment that the inhalation of the cement dust was not the proximate cause of death.

██ The death certificate was made out by Dr. M. F. Loub who attended the deceased. He recites that bronchial pneumonia was the principal cause of death, and that the contributing cause of importance was that the deceased "had just worked thirty continuous hours—exhausted him," that there was no accident or injury. Section 990, C. L. 1921 ('35 C. S. A., c. 78, §128) provides that a copy of such certificate when certified by the proper officer "* * * shall be prima facie evidence in all courts and places of the facts therein stated."

The contents of a death certificate may not be disposed of by a simple wave of the hand and a statement that it does not mean what it says. The doctor who makes it out certifies as to the correctness of its contents at the time he makes it out, and, where we have a situation, as we do here, that Dr. Loub who made out the certificate in the first instance, sought to explain away the legal effect of what he had certified to, the referee and commission were justified in considering that circumstance carefully. Dr. Loub had been the Elleman family physician for

seven or eight years and he admitted that the deceased might have had a slight touch of grippe on his return from Arizona.

■ It was not prejudicial error to ask Dr. Winternitz, a medical expert, whether death was the result of an accident based upon his examination of the death certificate alone. It is reasonable that such an expert can make certain deductions from the contents of a death certificate, and in this case it was at least corroborative testimony. *Bickes v. Travelers Ins. Co.*, 87 Colo. 297, 287 Pac. 859.

Mrs. Elleman admitted on direct examination that her husband was tired from the recent trip and that "he probably had a slight cold, but not much."

Whatever caused Elleman's death took place in the early part of February, a season when death from pneumonia is not uncommon. The commission had a right to take that into consideration.

■ This is not a case where the evidence in support of the judgment is so weak as to amount to no evidence. Citing *Rosenkranz v. Industrial Commission*, 83 Colo. 123, 262 Pac. 1014. There was sufficient competent evidence to support the findings. That being true it is not within the province of this court to disturb the judgment. *Industrial Commission v. Hammond*, 77 Colo. 414, 236 Pac. 1006; *Industrial Commission v. Robinson*, 85 Colo. 279, 275 Pac. 903; *Colorado Fuel & Iron Company v. Industrial Commission*, 85 Colo. 237, 275 Pac. 910; *Employers' Mutual Ins. Co. v. Industrial Commission*, 83 Colo. 315, 265 Pac. 99, and *Industrial Commission v. Diveley*, 88 Colo. 190, 294 Pac. 532.

The judgment is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HILLIARD concur.