No. 21816.

CITY AND COUNTY OF DENVER, POLICE DEPARTMENT, AND STATE COMPENSATION INSURANCE FUND *v.* BLANCHE C. SMERDEL, INDIVIDUALLY AND AS NEXT FRIEND OF SUSAN K. SMERDEL, A MINOR (CLAIMANTS IN THE MATTER OF THE DEATH OF EDWARD H. SMERDEL), AND THE INDUSTRIAL COMMISSION OF COLORADO.

(440 P.2d 158)

Decided April 29, 1968.

FRED B. DUDLEY, FRANCIS L. BURY, FEAY B. SMITH, JR., for plaintiff in error State Compensation Insurance Fund.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

JOHN G. FIELD, for defendants in error Blanche C. Smerdel, Individually and as next friend of Susan K. Smerdel, a minor.

*En Banc.*

Opinion by GEORGE McLACHLAN.*

THIS is a workmen's compensation case in which the dependents (widow and daughter) of Edward H. Smerdel, a police officer of the City and County of Denver, were awarded compensation for his death.

In the trial court the plaintiffs in error, City and County of Denver, Police Department, and the State Compensation Insurance Fund were plaintiffs. They will

*Retired District Judge sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

be referred to as the employer and the Fund, respectively. Blanche C. Smerdel and her daughter will be referred to as the claimants. The defendant in error, the Industrial Commission of Colorado, will be referred to as the Commission. Edward H. Smerdel will be referred to as Smerdel or as the deceased.

On July 16, 1961, Officer Smerdel was assigned to a one-man patrol car in East Denver to work a park detail. His shift began at 4:00 p.m., and was to end at midnight. On several occasions during this tour of duty Smerdel stopped at the Fire Station at 32nd and Curtis Streets where he visited with the firemen, made two or three calls, and had dinner with them. He furnished a watermelon in exchange for the dinner. On one such visit to the Fire Station he made inquiry concerning the availability of rags, stating "I haven't cleaned my gun for three or four months and I had better do something about it * * * and if I don't clean my gun, I'm going to be gigged." During his last visit to the Fire Station, Smerdel visited with Daniel P. Cronin, Assistant Chief of the Denver Fire Department, and, in response to a question, told Cronin, "I will be home by midnight. I am going to the sub-station and clean my gun, and I will see you on your next working day."

During this evening Smerdel was also observed by another police officer when he covered in on a disturbance call at approximately 10:00 p.m. To those who observed him on each of these occasions, Smerdel's conduct, demeanor, and attitude appeared to be both proper and normal.

At approximately 11:20 p.m., Police Officers Rein and Gross had occasion to go to the Police Department substation to inform their dispatcher that they were going out of service to eat their meal. After unlocking the front door and entering the sub-station, they observed Smerdel lying on the floor in a pool of blood. A pistol, later identified as decedent's, some cleaning rags, and five loads of ammunition were found either on or near

the center of the table in front of his body. Smerdel's body was lying on the floor with his right foot elevated and resting upon the table. A fatal contact gunshot wound was observed in decedent's chest behind powder-burned clothing. A spent bullet or slug was obtained from padding of a chair near decedent's body and the pistol contained one used shell beneath its hammer. Upon comparison, the spent shell, spent slug, and pistol all matched, indicating that the weapon was the lethal source of death, although no fingerprints were found upon it. A subsequent investigation by the authorities established that no third persons were involved and none of the parties to the action contend that Smerdel's death was a result of homicide.

After the body was discovered, a call was placed to Police Headquarters and an investigation was conducted by command officers of the Police Department, including Captain Tangye and John Schooley, then Manager of Safety and Excise for the City and County of Denver and Head of the Denver Police Department.

Coroner-pathologist Ogura was summoned to the scene of the death and pronounced Officer Smerdel dead at the sub-station. An autopsy was performed by Doctor Ogura the following day. At a coroner's inquest held at the request of the District Attorney's Office, Doctor Ogura testified that death was caused by a direct contact gunshot wound with resulting lacerations of the heart and left lung. The coroner's jury returned a verdict that Smerdel died as a result of a self-inflicted gunshot wound with intent to commit suicide. After the verdict was received, an amended death certificate was prepared and entered of record. This death certificate carries the notation of "suicide."

Subsequent to these events, claimants filed their claim for compensation and a hearing was held before a Referee of the Commission. At this hearing Doctor Ogura again testified that the cause of death was a direct gunshot wound. He elaborated further by stating in sub-

stance that this type of wound is very similar and consistent with a self-inflicted type of wound and is generally associated with suicide. He admitted, however, on further examination, that when he referred to the term "suicide" he was referring to a self-inflicted wound. The record does not reveal whether or not he makes any distinction between an accidental or an intentional self-inflicted wound.

Pursuant to the provisions of C.R.S. '53, 66-8-24, a properly certified true copy of the death certificate was admitted into evidence by the Referee without objection. A transcript of the record of the coroner's inquest and verdict was also entered.

Lieutenant Joseph F. Moomaw, a police officer in charge of the laboratory section of the department, testified that there were no identifiable fingerprints on the weapon. He further testified that it was not uncommon for a shell to hang in the cylinder of a revolver in the process of unloading it, particularly when the weapon is held in a downward position.

Another witness, John M. Schooley, testified in his capacity as Manager of Safety, and gave testimony as to what he observed at the scene of the death. In addition, Mr. Schooley was qualified as an expert with considerable experience in the use of firearms. Schooley testified that it was not uncommon for a person to hold a revolver with the barrel pointing toward the body and for the person to place his thumb on the trigger when cleaning the weapon or when attempting to look down the barrel. He also collaborated Moomaw's testimony with respect to shells hanging on the frame of the gun.

Other witnesses who testified for claimants included the widow, Chief Cronin (who testified as to conversation with deceased shortly before his death), and command officers of the Police Department. In a brief summary their testimony reveals that Smerdel had no marital difficulties or financial problems, that there were no serious complaints about his work record or personal

habits, and that there was no reason known to them that would motivate him to take his own life.

The Referee found that Smerdel suffered death as a result of an accident arising out of and in the course of his employment. The findings and conclusions of the Referee were approved and affirmed by the Commission and by the district court of the City and County of Denver on appeal.

The employer and the Fund are here on writ of error.

As grounds for reversal, plaintiffs in error urged that the trial court, Commission and Referee each improperly determined that the presumption against suicide was not overcome by the coroner's verdict and the certificate of death.

In support of their argument, the employer and Fund rely upon and cite the provisions of C.R.S. '53, 66-8-24 for the legal effect of a death certificate. The statute provides in pertinent part:

"* * * Any such copy of the record of a * * * death, when properly certified by the state registrar to be a true copy thereof, shall be prima facie evidence in all courts and places of the facts therein stated."

The principal thrust of the employer and the Fund is that the certificate of death, which was admitted without objection at the inquest, must by its own force be held to be prima facie proof that Smerdel committed suicide and, in light of the quoted statute, there is no room for the existence or operation of a presumption against death by suicide as found by the Referee.

It is settled law in this jurisdiction that it is competent for a legislative body to provide by statute that certain facts shall be prima facie or presumptive evidence of other facts. *Bishop v. Salida Hospital District*, 158 Colo. 315, 406 P.2d 329; *Garcia v. People*, 121 Colo. 130, 213 P.2d 387. It is equally well established that a certified copy of a death certificate is admissible in and is prima facie evidence of the facts recited therein. *Elleman v. Industrial Commission*, 100 Colo.

120, 66 P.2d 323; *Prudential Insurance Co. v. Cline,* 98 Colo. 275, 57 P.2d 1205; *Occidental Life Insurance Co. v. United States National Bank,* 98 Colo. 126, 53 P.2d 1180.

However, such presumption is not conclusive and the weight to be given such certificate depends upon the source of the information upon which it is based. In *National Farmer's Union Life Insurance Co. v. Norwood,* 147 Colo. 283, 363 P.2d 681, we considered a similar question that is now before us. There we said:

"* * * The 'presumption against suicide' and the recitals contained in the death certificate are only *prima facie* evidence of accidental death. Neither is conclusive, and each is rebuttable by evidence, be it direct or circumstantial, which tends to show the actual circumstances surrounding the death."

In the present case the Referee heard the testimony of the witnesses, considered the exhibits received into evidence (including the record of the coroner's inquest), and found that: "claimant produced substantial evidence to show decedent's death was accidental." That finding was adopted by the Commission. We cannot say as a matter of law that such a finding does not find support by the evidence in the record. Under these circumstances we are compelled by statute (C.R.S. 1963, 81-14-17) and case law to affirm. *Capital Chevrolet Co. v. Industrial Commission,* 159 Colo. 156, 410 P.2d 518.

For the record we also state that we have considered other arguments of the employer and the Fund and find them to be without support in the record.

The judgment is affirmed.