No. 25257

**Nancy Louise Lockwood v. The Travelers Insurance Company**

(498 P.2d 947)

Decided July 3, 1972.

104

Marvin Dansky, P.C., for plaintiff-appellee.

Madden and Strate, William J. Madden, for defendant-appellant.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Plaintiff Nancy Lockwood was the beneficiary of a group policy on the life of her deceased husband, Gary Allen Lockwood. This policy, issued by the defendant Travelers Insurance Company, provided for a $3,000 payment upon death, and in the event of accidental death, an additional $3,000 payment. The plaintiff beneficiary claimed the double indemnity benefits on the ground that her husband's death resulted from accidental bodily injuries.

The defendant insurance company paid the plaintiff $3,000 but denied liability for the payment of the additional $3,000 accidental death benefit for which plaintiff thereupon brought action against the defendant insurance company in the trial court. The defendant insurance company denied that the death was accidental, and further alleged that the insured had committed suicide, an excepted risk under the accidental death provisions of the policy.

After trial to a jury, a verdict for the plaintiff in the amount of $3,000 was returned, and a judgment against the defendant was accordingly entered. On appeal, the defendant alleges several errors which it claims require reversal of the trial court's judgment. We agree with the defendant's contentions that the jury was improperly instructed on the presumption of accident and on the burden of proof necessary to overcome that presumption. Also, we agree with the defendant's assertion that the trial court committed

reversible error when it admitted into evidence the death certificate without excising a portion of it. We therefore reverse the judgment and remand this cause to the trial court for a new trial.

All the other allegations of error by the insurance company are not sustainable, and only those which are of some significance require limited discussion herein.

The pertinent facts as shown from the evidence are summarized. The plaintiff, her deceased husband and several acquaintances had attended a New Year's Eve party and were in the process of going to another party when they stopped at the Lockwood home so that he could change his shirt. The plaintiff and her husband went into their bedroom. He closed the door behind them. The plaintiff testified that he then made sexual advances toward her which she resisted. While she went to the closet to get a shirt for her husband, he took a .45 calibre automatic pistol from a dresser drawer. The testimony indicated that this weapon was always kept in this drawer with a live round of ammunition in the chamber. When the plaintiff turned from the closet, she saw the insured with the gun in his hand. She told him three times to put it away and he said that he would. She turned back to the closet and the gun was then discharged. The plaintiff further stated that she and her husband were not having angry words, but that they were in disagreement about having another child.

The testimony of the other witnesses who were in the house at the time is essentially the same, but some of their testimony indicated that the plaintiff and her husband had been "picking at each other" all evening. Another testified that she heard the plaintiff say "put it away" three times and that this was immediately followed by the shot. Other testimony presented showed that the insured loved his wife and child, and was happy in his work. The testimony was conflicting as to his state of intoxication at the time of death. A toxologist testified that he had performed a blood alcohol test on the deceased some days later and determined the alcohol content to be .105.

Relatives and friends of the insured testified that he was extremely familiar with guns. A police officer who was knowledgeable about hand guns testified that the pistol in question was a heavy weapon and that it had two safety devices, both of which had to be depressed simultaneously as the trigger was depressed in order for this gun to fire. In other words, a person would have to squeeze the handle of the pistol with sufficient pressure to depress the rear safety, and at the same time, depress the second safety with his thumb before the trigger could be actuated.

The fatal shot penetrated the head at the hairline of the right temple, traveled at a slightly upward angle, and exited on the left side of the head. There were powder burns at the point of entry and the muzzle of the gun had bits of skin, bone and blood on it.

The coroner testified that he had not conducted a personal investigation of the incident, but relied on the reports of his investigator and the police officers as the basis of his report and his conclusion as to the cause of death. No formal inquest was held. The original death certificate listed the cause of death as "suicide," but this was later amended to read "accident." The coroner stated that the prime factor in his decision to amend was the fact that the motor vehicle law had been revised to lower the level of blood alcohol for driving under the influence from .150 to .100. The amended death certificate was admitted into evidence over the defendant's objection.

## I.

The defendant contends that the trial court erred in failing to direct a verdict in favor of the defendant because (1) no presumption of accident existed at the conclusion of all the evidence, and (2) because even if the presumption and the amended death certificate created a prima facie case, the defendant's evidence overcame the prima facie case. The defendant argues that while death in an unexplained manner by violent external means creates a presumption of accident, the manner of death here was not unexplained.

In our view, the facts of this case and the inferences

which logically could be drawn from these facts do not conclusively or with requisite certainty exclude the possibility of death resulting from accidental bodily injuries as opposed to suicide. To express it in another way, the facts and the inferences to be drawn therefrom, although suggestive of suicide, do not wholly eliminate accidental death. Taken as a whole and fairly construed, the evidence did not conclusively establish suicide. The resolution of the issue was therefore properly for the jury. *See Bickes v. Travelers Insurance Co.,* 87 Colo. 297, 287 P. 859; *Preferred Acc. Ins. Co. v. Fielding,* 35 Colo. 19, 83 P. 1013; *Travelers Insurance Co. v. McConkey,* 127 U.S. 661, 8 S.Ct. 1360, 32 L.Ed. 308; *Parfet v. Kansas City Life Ins. Co.,* 128 F.2d 361 (10th Cir.)

II.

The defendant next complains of several instructions given to the jury and predicates error both on the giving of these instructions and on the court's refusal to give three instructions tendered by the defendant.

Instruction No. 2 informed the jury that plaintiff had the burden of proving her case by a preponderance of the evidence and that the defendant had the burden of proving its allegation of suicide by a preponderance of the evidence. The instruction also defined preponderance of the evidence.

Instruction No. 8 read:

"You are instructed that a violent, external, unexplained death is presumed to be accidental, and the presumption is against suicide; and consequently, the burden of proving suicide is upon the party of pleading it, who in this case is the Defendant Insurance Co. The presumption is not conclusive and is rebuttable by evidence either direct or circumstantial."

Instruction No. 9 explained presumptions and told the jury that they "take the place of evidence unless and until outweighed by evidence to the contrary." It also stated, "In this case the law presumes that violent, unexplained death is accidental and that the statements on the official death certificate . . . are on their face true."

Instruction No. 2 correctly stated that the plaintiff had the burden of proving every element of her case by a

preponderance of the evidence. It incorrectly placed an equal burden on the defendant to prove suicide. A more accurate statement of the law is that when death by accident is challenged and suicide is alleged, the plaintiff has the burden of proving by a preponderance of the evidence that the death was the result of accident rather than suicide.

■ The plaintiff always has the burden of proving his or her case. Once a prima facie case is established, the burden of going forward to rebut the prima facie case shifts to the defendant. This burden of going forward is met when the defendant has introduced enough evidence to present a jury question where formerly there was a prima facie case.

■ Applying this analysis to the particular facts of the case before us, we find that the plaintiff's allegation of accident, coupled with the amended death certificate, the presumption of accident, and other evidence, established a prima facie case of death by accident. The burden of going forward then shifted to the defendant to produce sufficient evidence to rebut and overcome this prima facie case. This burden was purportedly met here through the denial of death by accident and the allegation of suicide in defendant's answer, *Murray v. Travelers Insurance Co.,* 143 Colo. 258, 352 P.2d 678, and the evidence presented on behalf of the defendant, including testimony regarding the peculiarities of the weapon used and the fact that the original death certificate had listed suicide as the cause of death. *See* 46 C.J.S. *Insurance* § 1317.

■ When the "accident-suicide" dichotomy is placed in issue as it was here by the pleadings and the rebuttable presumption, the plaintiff has the burden of proving accident to the exclusion of suicide by a preponderance of the evidence. *See* 46 C.J.S. *Insurance* § 1319(4)(b); *Industrial Comm. v. Peterson,* 151 Colo. 289, 377 P.2d 542; *American Ins. Co. v. Naylor,* 101 Colo. 34, 70 P.2d 349.

Therefore, the court's Instruction No. 2 incorrectly stated the law to be applied in this case by telling the jury that the defendant had to prove suicide by a preponderance of the evidence. This instruction shifted the entire burden of proof

rather than shifting only the burden of going forward with the evidence to rebut the presumption and plaintiff's prima facie case. *American Ins. Co. v. Naylor, supra.*

Instruction No. 8 likewise placed too much of a burden on the defendant. Rather than placing upon the defendant the burden of going forward to rebut the prima facie case of accident, the defendant was faced with a burden of affirmatively proving suicide.

Instruction No. 9 had the effect of improperly making statements in the death certificate conclusively true rather than presumptively and rebuttably true. In Section III of this opinion, we hold that the admission into evidence of this death certificate without excision was reversible error.

Defendant's tendered Instruction No. 1, on the other hand, was a correct statement of the law on the burden of proof as we have discussed it above and it should have been given to the jury in place of the trial court's Instruction No. 2.

Defendant's tendered Instruction No. 2 defined the terms accident and suicide. It was no more than a restatement of the court's Instruction No. 7. The defendant did not object to the giving of the court's Instruction No. 7 when it was given. The court having adequately instructed on this point, it was not error to refuse this tendered instruction. *Lowe v. People,* 76 Colo. 603, 234 P. 169.

Defendant's tendered Instruction No. 3 dealt with the matter of intoxication as being a circumstance which would not necessarily indicate accidental death. The instruction then continues by stating that if the jury finds that the deceased intentionally placed the gun to his head and fired the lethal shot, the jury would, in effect, be required to find that the deceased committed suicide. This is not a complete and therefore not an accurate statement of the law. It omits any reference to the deceased's state of mind or intent at the time the gun went off. The trial court did not err in refusing tendered Instruction No. 3.

These improper and confusing instructions given to the jury on the respective burdens of proof of the plaintiff and

the defendant, and the effect to be given to the death certificate, require reversal.

### III.

■■■ The defendant contends that it was error to admit the amended death certificate into evidence. 1967 Perm. Supp., C.R.S. 1963, 66-8-17 provides "Any copy of the record of . . . death, when properly certified by the department of public health to be a true copy thereof, shall be prima facie evidence in all courts . . . of the facts therein stated." This court has held that it is competent for a legislative body to provide by statute that certain facts shall be prima facie or presumptive evidence of other facts. *City and County of Denver, Police Department v. Smerdel,* 165 Colo. 475, 440 P.2d 158; *Bishop v. Salida Hospital District,* 158 Colo. 315, 406 P.2d 329. It has also been held by many decisions of this court, a few of which are cited here, that a certified copy of a death certificate is admissible and is prima facie evidence of the facts recited therein. *City and County of Denver, Police Department v. Smerdel, supra; National Farmers Union Life Ins. Co. v. Norwood,* 147 Colo. 283, 363 P.2d 681; *Elleman v. Industrial Commission,* 100 Colo. 120, 66 P.2d 323; *Prudential Insurance Co. v. Cline,* 98 Colo. 275, 57 P.2d 1205; *Occidental Life Ins. Co. v. United States National Bank,* 98 Colo. 126, 53 P.2d 1180.

We have, however, consistently tempered the effect of a death certificate in a number of cases. In *Prudential Insurance Co. v. Cline, supra,* we stated:

"Though the certified copy of the death certificate was prima facie evidence of suicide, its weight depends of course, upon the information upon which the certificate was based, the source of that information, and the manner in which it was obtained."

In *National Farmers Union Life Ins. Co. v. Norwood, supra,* we held that:

"The 'presumption against suicide' and the recitals contained in the death certificate are only prima facie evidence of accidental death. Neither is conclusive, and each is rebuttable by evidence, be it direct or circumstantial, which tends to

show the actual circumstances surrounding the death."

    Regardless of our previous pronouncements, we now rule that the death certificate here without excision should not have been admitted as an exhibit. The coroner's death certificate statement that death resulted from accident, rather than suicide or homicide, is not based upon any supportable premise which would lend to its trustworthiness. It is no more than a conclusory statement based on hearsay and does not therefore merit judicial consideration. Even if the coroner's opinion that the death was caused by accident was inserted in the death certificate after an investigation by him, it would still constitute only his opinion and would not rise in this case to the statute of "facts" which may be considered as presumptively true in all courts pursuant to 1967 Perm. Supp., C.R.S. 1963, 66-8-17.

    It is now our view, and we so hold, that the term "facts" as used in this statute do not extend to the coroner's opinion as to whether death from external means resulted from accident, suicide, or homicide when the critical issue in the case is whether death resulted from one of these causes. Therefore, in such cases, the coroner's opinion in this regard must be excised from the death certificate before it may be admitted into evidence. The admission into evidence of the unexcised amended death certificate in this case constitutes reversible error.

We recognize that by this holding we are overruling a precedent which has been affirmed not only by those cases cited herein but by a number of other Colorado cases. However, we are convinced that we have now adopted a fair and more reasonable rule for prospective application in litigation involving similar fact situations.

We are convinced that our decision of today with regard to the introduction into evidence at a trial of a death certificate and our interpretation of 1967 Perm. Supp., C.R.S. 1963, 66-8-17 combine to enhance the fairness of a trial where the critical issue is death by accident, by suicide, or by homicide. In any trial where the pivotal issue is death resulting from one of these causes, the decision as to the cause of death is

solely the prerogative of the fact finder.

We have examined many cases from other jurisdictions on this subject. There is a split of authority and several jurisdictions adhere to a precedent similar to our prior decisions. In our view, the better reasoned cases from many jurisdictions conform to our holding herein. *See* for example *Southern Life and Health Ins. Co. v. Medley,* 161 So. 2d 19 (Fla.); *Callahan v. Connecticut General Life Ins. Co.,* 357 Mo. 187, 207 S.W.2d 279; *Seater v. Penn Mut. Life Ins. Co.,* 176 Or. 542, 156 P.2d 386, *reh. den.,* 176 Or. 569, 159 P.2d 826; *Biro v. Prudential Ins. Co.,* 57 N.J. 204, 271 A.2d 1; *Life Insurance Co. of Virginia v. Brockman,* 173 Va. 86, 3 S.E.2d 480; *Carson v. Metropolitan Life,* 156 Ohio St. 104, 100 N.E.2d 197; *Kentucky Home Mutual Life Insurance Co. v. Watts,* 298 Ky. 471, 183 S.W.2d 499; and *Spiegel's House Furnishing Co. v. Industrial Commission,* 288 Ill. 422, 123 N.E. 606.

Judgment reversed and cause remanded for a new trial.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE KELLEY concurring in part and dissenting in part.

MR. CHIEF JUSTICE PRINGLE concurring in part and dissenting in part.

I concur in Sections I, II of the majority opinion. I respectfully dissent to Section III of the majority opinion.

As the majority opinion points out, we have in many previous decisions interpreted 1967 Perm. Supp., C.R.S. 1963, 66-8-17 to permit the introduction of a death certificate in such a manner as to hold competent the portion of the death certificate today interdicted by the majority opinion. *National Farmers Life Insurance Company v. Norwood,* 147 Colo. 283, 363 P.2d 681, is an example of these cases. In that case the specific clause of the death certificate now held inadmissable by the majority opinion was held to be properly admitted.

I am firmly committed to the philosophy that when this court interprets a statute and sets forth its meaning in clear and unequivocal terms and the legislature over a period of years does not change the statute, then the legislature has

expressed its agreement that the intent and the meaning of the statute is as the Supreme Court has interpreted it. That interpretation, in my view, then becomes as much a part of the statute as if the legislature had expressly stated it within the statute itself. Under such circumstances I would not invade the province of the legislature and by judicial act, change the intent and meaning of the legislation even though I might have ruled differently were it a matter of first impression.

I am fortified in this conclusion by the fact that the legislature has expressly enacted legislation to express its true intent in several instances when it felt that the meaning attributed to the statute by the court was not the meaning which legislature intended. See for example 1971 Perm. Supp., 81-2-9(3) and the editor's note following the amendment.

I am authorized to say that Mr. Justice Kelley concurs in this opinion.