Ronald BERNSTEIN, Personal Representative of the Estate of Gwendolyn B. Trychta, Deceased, Plaintiff-Appellee,

v.

Bernadine ROSENTHAL, Personal Representative of the Estate of Ronald J. Trychta, Deceased, Defendant-Appellant.

No. 82CA1041.

Colorado Court of Appeals, Div. I.

April 7, 1983.

Rehearing Denied April 29, 1983.

Certiorari Denied Sept. 26, 1983.

Boatright & Boatright, Charles F. Molling, Wheat Ridge, for plaintiff-appellee.

Gorsuch, Kirgis, Campbell, Walker & Grover, Kenneth G. Christianssen, Robert J. Kapelke, Denver, for defendant-appellant.

BERMAN, Judge.

Bernadine Rosenthal, personal representative of the estate of Ronald Trychta, appeals the trial court's decision finding Ronald guilty of second degree murder of his wife Gwendolyn and preventing his estate from recovering under his wife's life insurance policy. We affirm.

Ronald and Gwendolyn Trychta were found dead by sheriff's officers in their home on December 5, 1979. The coroner concluded from a study of the positions of the bodies, the powder burns, and the type of wounds, that Ronald had killed Gwendolyn with a single gunshot would to the head. He also determined that Ronald had shortly thereafter taken his own life with a single shot to his temple. Death certificates were filed which listed the cause of Gwendolyn's death as homicide and Ronald's as suicide.

At the time of Gwendolyn's death she held a life insurance policy in the amount of $49,000 wherein Ronald was the named beneficiary. Appellee, the personal representative of Gwendolyn's estate, filed suit claiming that Ronald's estate was not entitled to the proceeds of the life insurance policy because Ronald was guilty of Gwendolyn's murder. Ronald's estate claimed the proceeds by reason of Ronald's survival of Gwendolyn.

Over appellant's objection, the trial court admitted the coroner's reports and death certificates. The court found, by a preponderance of the evidence, that Ronald was guilty of second degree murder and that, as a result, his estate was not entitled to receive the proceeds of Gwendolyn's life insurance policy. It also awarded Gwendolyn's estate wrongful death damages sufficient to cover Gwendolyn's funeral and burial expenses.

I.

Appellant argues that § 15–11–803, C.R.S.1973, does not prevent a beneficiary of his or her spouse's insurance policy who has been found guilty in a civil court of murder of the policyholder from taking under that policy. We disagree.

The statute provides, in pertinent part: "Notwithstanding an acquittal or dismissal, if a court of competent jurisdiction finds by a preponderance of the evidence that a surviving spouse commits murder in the first or second degree or manslaughter, as said crimes are defined in sections 18–3–102 to 18–3–104, C.R.S. 1973, such surviving spouse is not entitled to any benefits under the will or under this article [§ 15–11–101, et seq., C.R.S. 1973, concerning intestate succession and wills], and the estate of the deceased spouse passes as if the killer had predeceased the decedent."

Appellant asks this court to interpret this statute in an overly restrictive manner, contending that because the statute refers only to "benefits under the will or under this article," a civil court's determination of guilt does not prevent the distribution of life insurance proceeds to the killer. We decline to do so.

Such a reading of the statute would allow a husband to insure his spouse's life, naming himself as beneficiary. Then, neither the killer nor his estate could be prevented from collecting the insurance proceeds, un-

less a verdict of guilty were obtained in a criminal court finding the killer guilty of first or second degree murder or manslaughter. *See* § 15–11–803(3), C.R.S.1973. If the killer committed suicide, or died of other causes prior to being convicted, no conviction could be obtained, thus allowing the killer's estate to benefit from his wrongdoing.

The rules of statutory construction provide that a statute should be construed to arrive at a just and reasonable result. Section 2–4–201(1), C.R.S.1973 (1980 Repl.Vol. 1B). The result which appellant presses before this court is neither just nor reasonable. Therefore, we hold that if a court of competent jurisdiction finds by a preponderance of the evidence that a beneficiary of a life insurance policy is guilty of first or second degree murder or manslaughter of his spouse, the named insured, the killer may not recover under that policy.

## II.

Appellant also argues that the trial court's finding that Ronald was guilty of second degree murder was not supported by the evidence. Appellant has not established that this finding was in error.

Our Supreme Court recently set out the test to be used by a factfinder to determine whether a defendant is guilty of second degree murder. Two factors must be established:

> "The first is that death was more than merely a probable result of defendant's actions; and the second is that the defendant was aware of the circumstances which made death practically certain.

> . . . .

> Like intent, subjective awareness of the probability of consequences is a matter which often must be inferred from defendant's conduct and surrounding circumstances."

*People v. Mingo,* 196 Colo. 315, 584 P.2d 632 (1978).

We hold that, by an examination of the coroner's reports and death certificates, the court reasonably concluded that a preponderance of the evidence supported a finding of second degree murder.

## III.

Appellant also cites the admission of the coroner's reports and death certificates as error. We disagree with this contention.

Appellant argues that *Lockwood v. Travelers Insurance Co.,* 179 Colo. 103, 498 P.2d 947 (1972) is controlling. However, *Lockwood* was decided before the adoption of the Colorado Rules of Evidence. At least insofar as it governs the admissibility of coroner's reports, *Lockwood* is inapplicable since the adoption of those rules.

CRE 803(8) and (9) specifically allow for the introduction of public records and reports and records of vital statistics. The coroner's reports qualify as public records, and the death certificates are records of vital statistics. Thus, their introduction was proper.

## IV.

Appellant's final argument disputes the award of wrongful death benefits to Gwendolyn's estate for funeral and burial expenses. Because this argument is based entirely on appellant's preponderance of the evidence argument, *supra,* it fails for the same reasons.

We find appellant's contentions as to the disposition of jointly held property to be without merit.

Judgment affirmed.

STERNBERG and COYTE,* JJ., concur.

---

* Retired Court of Appeals Judge sitting by assignment of the Chief Justice under provisions of the *Colo. Const.,* Art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S.1973 (1982 Cum.Supp.).