## Garden v. Nationwide Insurance Company

*John S. Cupp,* for plaintiff.
*Stephen J. Summers,* for defendant.

FRANKS, *J.,* April 30, 1986 — This opinion is in support of our order of February 18, 1986, granting summary judgment. for defendant and against plaintiff.

On or about September 30, 1983, plaintiff, Barbara J. Garden, was socializing with her boyfriend

and neighbor. The trio consumed alcoholic beverages at home and then proceeded to three local bars at which they had several drinks. The group finally came to rest at the Central Bar in Republic, Pa. During the evening the parties had walked from bar to bar.

After arriving at the Central Bar, plaintiff and her boyfriend engaged in a quarrel with some indication that the boyfriend struck plaintiff. Plaintiff left the bar and the boyfriend followed her. They continued their argument on the street corner outside the bar.

Officer Edward Manchas of the Redstone Township police responded to a report of a domestic disturbance at the Central Bar. He came upon plaintiff and her boyfriend arguing on the corner. As he approached the couple, he heard plaintiff say, "I just can't take it anymore." Plaintiff then left the scene and strode through a nearby parking lot toward Route 166. At his deposition, Officer Manchas testified that, while he noted she had been drinking, plaintiff exhibited neither slurred speech nor staggered gait.

Plaintiff's boyfriend followed her through the parking lot. Fearing a further disturbance might ensue, Manchas returned to his vehicle and circled the block. To intercept the parties, the officer used an alley which exited at an uncontrolled intersection of Route 166. As he approached Route 166, Officer Manchas saw plaintiff sitting to the right of his vehicle in the southbound lane near the middle of Route 166. She was darkly clothed and sat with her back toward oncoming traffic.

In order to safely exit the alley the officer was required to pull into the southbound lane of Route 166 to have a clear view of oncoming traffic. As he pulled into Route 166, he became aware of the automobile driven by defendant's insured, Stephen

Kitka. The car was approximately 20 to 25 feet away. Kitka moved into the center of the road and passed the police car at 20 miles an hour. As he returned to the southbound lane, he struck plaintiff causing her considerable injuries. Kitka and Manchas both indicate that due to the darkness of night and the position of the police vehicle, that plaintiff was impossible to see.

Plaintiff filed suit against defendant claiming benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act (formerly 40 P.S. §1009.101 et seq.) because of her injuries. Defendant denied liability asserting plaintiff had acted intentionally and had attempted to commit suicide. Plaintiff denied these allegations and averred her injuries were the result of an accident.

## APPLICABLE LAW — NO-FAULT INSURANCE ACT

Defendant asserts under the repealed No-fault Act, 40 P.S. §1009.208, plaintiff is barred from recovery because she intentionally injured herself. That section provides:

"An individual intentionally injures himself or another individual if he acts or fails to act for the purpose of causing such injury or with knowledge that such injury is substantially certain to follow. An individual does not injure himself or another individual:

(a) merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury." 40 P.S. §1009.208.

Plaintiff makes general assertions as to the meaning of this statute but cites no supporting case law. Our research reveals a number of cases which interpret section 208 or a sister provision of the act, section 301, 40 P.S. §1009.301, in the same manner.

To bar recovery plaintiff must be guilty of an intentional act which she had a substantial certainty would result in injury; mere reckless behavior is insufficient. *Teagle v. Hart,* 279 Pa. Super. 487, 421 A.2d 304 (1980). *In accord, Reimer v. Deliso,* 296 Pa. Super. 205, 442 A.2d 731 (1982).

## INTENTIONAL ACT

There is no issue of the fact that plaintiff was sitting or stooped in the middle of the road. It is not seriously contended that she in some way fell into the road. Thus, the question arises whether plaintiff was attempting to commit suicide. We agree with plaintiff that to sustain the defense of attempted suicide defendant must prove an "intentional act."

"Unquestionably, suicide is the intentional taking of one's own life. It requires intent to kill. Intent is the essence of the act and presupposes a mind sound enough to form that intent." *Kent v. New England Mutual Life,* 227 N.Y.S. 778, 793, 53 Misc. 2nd 82 (1966). We find proof of suicide is sufficient under section 208 to prove an intentional act.

Plaintiff asserts that she could not have acted intentionally on the night of the accident due to her intoxication. Plaintiff faces two difficulties. Initially, we note that in the majority of civil and criminal cases mere intoxication is simply insufficient to prove a lack of ability to form intent. See for example, *Commonwealth v. Stoyko,* 504 Pa. 455, 475 A.2d 714 (1984), (intent to commit murder of the first degree not precluded by intoxication); *Kent,* supra, (intent to commit suicide not precluded by intoxication); Murrary on Contracts 2d §11 (intoxication must be substantial to avoid the capacity to contract).

Although we find no Pennsylvania cases related to the subject of suicide while intoxicated, we note

with approval the case of *Lockwood v. Travelers Insurance Co.*, 179 Colo. 103, 498 P.2d 947 (1972) wherein the court opined: "[T]he fact of intoxication will not convert death from suicide to accident if the intent to do the act exists. Even a drunken and maudlin intent may suffice." Thus, plaintiff must prove that she lacked the capacity to form such an intent.

It is here that the second problem arises. The record is sorely lacking in evidence that plaintiff was in such extreme condition that she was incapable of forming intent. There is some evidence that plaintiff had considerable amounts of alcohol that evening, but the evidence stops at this point.

Plaintiff does not state that she was intoxicated to an extreme degree. In her deposition she states she did not remember the events of the evening. However, when further questioned, she recalled the events leading to the accident, including walking along Route 166. Thus, the lapse of memory is solely concerning her act of sitting in the roadway. Further, plaintiff did not attribute her lack of memory to her intoxication.

In contrast to plaintiff's case, defendant has submitted in plethora of supporting documents. Officer Manchas states in his deposition that while he believed plaintiff had been drinking, he felt she was still in control of her faculties. She neither slurred her speech nor staggered during the moments preceding the incident. As part of the pretrial statement, defendant submitted medical records which show that plaintiff admitted to doctors and social workers who treated her that she had intended to commit suicide and that she wanted to die. In addition to these documents, defendant also submitted the affidavits of a treating physician and a witness at the scene, both of whom aver that plaintiff stated

that she wanted to die and/or she was attempting to commit suicide. These documents remove any doubt as to plaintiff's intoxication precluding her ability to form the necessary intent.

Plaintiff again submitted no counter-affidavit but relied on her testimony at her deposition. At her deposition, plaintiff once again stated that she could not remember making the statements to the doctors (she made no comment as to the social worker or the eyewitness). She asserted in that testimony that she was heavily sedated and therefore unaware of her statements. However, plaintiff remembers the balance of her conversation with the doctors.

No statement in plaintiff's deposition truly places the issues of this case into controversy. Her lack of memory and the failure to produce any affidavits which would negate defendant's evidence that she was able to form an intent to injure herself suggests strongly that she has no such evidence.

## CONCLUSION

Hence, we find that no material issue of genuine fact exists in the instant case. Defendant has submitted admissions by plaintiff that she fully intended to commit suicide on the evening of September 30, 1983. Plaintiff has failed to contradict these assertions. The law is clear that intentional injury will preclude recovery benefits. We find, therefore, that defendant is entitled to the grant of a motion for summary judgment. *Professional and Public Service Employees v. Trinisewski,* 94 Pa. Commw. 462, 504 A.2d 391 (1986).

[Portions of the court's opinion, regarding the standard for ruling on a motion for summary judgment, have been omitted.]