Jeffrey Dean STEVENS, a minor, By and Through his parents and next friends, Michael STEVENS and Susan Stevens, Plaintiff–Appellee,

v.

HUMANA OF DELAWARE, INC., a Delaware corporation, d/b/a Humana Hospital Mountain View, Defendant–Appellant.

No. 90CA0945.

Colorado Court of Appeals,
Div. III.

April 23, 1992.
Rehearing Denied May 28, 1992.

King, Paulsen, Wanebo & Katz, P.C., Randall J. Paulsen, Westminster, for plaintiff-appellee.

Montgomery Little Young Campbell & McGrew, P.C., William H. ReMine, III, Englewood, for defendant-appellant.

Opinion by Judge DUBOFSKY.

Defendant, Humana of Delaware, Inc., appeals the judgment entered in favor of plaintiff, Jeffrey Dean Stevens, a minor, by and through his parents and next friends, Michael Stevens and Susan Stevens, for negligence which resulted in major neurological and muscular injuries at birth. We affirm.

At approximately 6:00 p.m. on February 18, 1987, Susan Stevens arrived at Humana Hospital already in labor and was taken directly to the labor and delivery room. The child, Jeffrey Stevens, was born at 6:56 p.m. When the child's head and neck first appeared, the umbilical cord was knotted and wrapped around his neck and was compromising his oxygen intake. A significant amount of meconium, a substance often found with babies that have incurred oxygen deprivation problems during the birthing process, was on the child.

Prior to Jeffrey Stevens' birth, a fetal heart monitor was attached in the labor and delivery room. There were indications from the fetal heart monitor that Jeffrey Stevens was experiencing oxygen deprivation during the birthing process.

Prior to the child's birth, the medical records indicate several phone calls were made to the mother's obstetrical-gynecological physician(s) to obtain their assistance.

Timely contact was not made, and none of the members of the obstetrical/gynecological group of physicians that cared for the mother was present either when the child was born or immediately thereafter.

Instead, the nurses located a physician in the hospital who arrived at the labor and delivery room at approximately the same time Jeffrey Stevens was emerging from his mother's vagina. When the physician observed the condition of the child, particularly the umbilical cord, he immediately countermanded an earlier directive from the nurses instructing the mother to "push." Thereafter, the birth was completed under that doctor's direction.

Jeffrey Stevens has cerebral palsy and suffers from severe mental retardation, paralysis, and cortical blindness, and plaintiff alleged that such condition was the result of oxygen deprivation during and immediately after the birth and would have been prevented by proper medical care.

After hearing the evidence and deliberating, the jury awarded the plaintiff $1,000,000 for non-economic losses and $5,000,000 for economic/medical losses. The jury apportioned 55% of the liability to Susan Stevens' treating obstetrical-gynecological physician and 45% to Humana Hospital. Pursuant to statute, the trial court reduced the non-economic losses to $500,000, *see* § 13–21–102.5, C.R.S. (1987 Repl.Vol. 6A), and entered judgment against Humana Hospital for 45% of $5,500,000. The trial court added pre-judgment interest.

I.

■ Humana contends that the trial court erred in admitting a certain medical record entry. This entry stated that the nurse anesthetist did not arrive in the labor and delivery room until five minutes after Jeffrey Stevens was born. We disagree with Humana.

A.

Approximately five hours after Jeffrey Stevens was born, a nurse from Children's Hospital came to Humana Hospital as part of a transport team to take him to Chil-

dren's Hospital for treatment. She testified that, as part of her routine duties, she took statements from persons at Humana to obtain an accurate history of the child. These statements dealt, *inter alia,* with the child's situation while he and his mother were in the labor and delivery room. Over objection by Humana, the trial court admitted the transport note stating the anesthetist's post-birth arrival under CRE 803(6), CRE 801(d)(2)(D), and CRE 803(24).

In *Schmutz v. Bolles,* 800 P.2d 1307 (Colo.1990), the court stated:

There are five requirements for a business record to be admissible under CRE 803(6):

(1) The document must have been made "at or near" the time of the matters recorded in it;

(2) The document must have been prepared by, or from information transmitted by, a person "with knowledge" of the matters recorded;

(3) The person or persons who prepared the document must have done so as part of a "regularly conducted business activity";

(4) It must have been the "regular practice" of that business activity to make such documents; and

(5) The document must have been retained and kept "in the course of" that or some other, "regularly conducted business activity."

The transport team nurse who made the crucial entry could not remember the name of the person who provided her this information. However, she testified that it was her custom and routine to take a history in regard to the circumstances surrounding the birth of every child that she was involved in transporting for care to Children's Hospital. She further testified that this history is routinely taken from a nurse who was present at the child's delivery and would therefore have first-hand knowledge of the events within the labor and delivery room.

Relying largely on the transport nurse's testimony about her routine, the trial court admitted the note for the truth of the matter asserted, *i.e.,* that the nurse anesthetist

did not arrive in the delivery room until five minutes after the child was born. The significance of the anesthetist's late arrival is that, at the moment of birth, the baby was suffering from severe oxygen deprivation and the presence of professionals trained in resuscitating such distressed babies was essential to prevent serious neurological injuries.

Humana argues that the trial court erred in admitting the evidence under CRE 803(6) because the evidence is inadequate to prove that the person who made the statement to the transport nurse was in the labor and delivery room when the nurse anesthetist arrived or that the person who made the statement to the transport nurse was an agent or employee of Humana. Thus, the dispositive question is whether the evidence was sufficient for the jury to find that an agent or employee of Humana made the statement and was in the labor and delivery room when the nurse anesthetist arrived. *See People v. Lowe,* 660 P.2d 1261 (Colo.1983).

The evidence and the inferences from it strongly suggest that a nurse who worked at Humana was the person who told the transport team nurse about the nurse anesthetist's late arrival. The Humana nurse testified that as part of her responsibilities she typically spoke with the incoming transport nurse about a troubled baby's situation.

The evidence further indicates that the Humana nurse was in the nursery while the transport team nurse was there picking up the child. Also, two people testified that the Humana nurse was in the delivery room when Jeffrey Stevens was born.

Furthermore, there is other evidence indicating the nurse anesthetist arrived after the birth. The Humana Hospital records do not indicate that the nurse anesthetist was in the delivery room when Jeffrey Stevens was born. The records do indicate that phone calls were made to the mother's obstetrical-gynecological physician group prior to Jeffrey Stevens' birth. There is, however, no indication in the medical records that a call was placed to the nurse anesthetist prior to Jeffrey Stevens' birth.

Still other testimony indicates that numerous phone calls were made after the child's birth that were not recorded in the medical records. The nurse anesthetist testified that he was paged while he was in the hospital cafeteria and that in response to the page he spoke by telephone with someone in the labor and delivery room. After a brief conversation, he left the dining area and went directly to the labor and delivery room.

As part of its argument that the evidence is not adequate to support admission of this record entry under CRE 803(6), defendant relies on the testimony of the attending physician and the nurse anesthetist that the anesthetist was present when Jeffrey Stevens was born. While such testimony may militate against the weight to be given the record entry, it does not prohibit its admission.

Humana relies on *Ricciardi v. Children's Hospital Medical Center*, 811 F.2d 18 (1st Cir.1987) to support its contention that the trial court erred in admitting the transport note into evidence under CRE 803(6). In *Ricciardi*, a doctor's handwritten note regarding an apparent mishap in an operating room was found inadmissible under CRE 803(6) because the plaintiff could not establish that the information came from a source with personal knowledge of the incident.

However, *Ricciardi* is distinguishable because the evidence there did not support a reasonable conclusion that the person who provided the information for the medical note was in the operating room and therefore had personal knowledge of the incident. Here, the evidence showing the presence of the Humana nurse provides an adequate basis for admission of the note under CRE 803(6).

We therefore conclude that the above-referenced evidence provides adequate support for the trial court's admission of the Children's Hospital transport note under CRE 803(6).

### B.

Humana next argues that the trial court erred in admitting this statement as an admission under CRE 801(d)(2)(D). CRE 801(d)(2)(D) indicates that a statement is not hearsay if it is made by a party's agent or servant concerning a matter within the scope of his agency or employment during the existence of the relationship. Defendant claims that the evidence was inadequate to establish that either an agent or employee of the hospital made the statement to the transport nurse. However, for reasons previously stated, we disagree with this contention.

To the contrary, the testimony of the transport team nurse and the Humana nurse are sufficient to show that an agent of Humana made the statement, and accordingly, the court properly found it to be within the scope of CRE 801(d)(2)(D).

As an alternative to the above analysis, we also agree with the trial court that the transport note is admissible under CRE 803(24). CRE 803(24) states in pertinent part:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (a) the statement is offered as evidence of a material fact; (b) the statement is more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts; and (c) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Medical records have long been considered the prototype of business records for which admission as an exception to the hearsay rule is appropriate. *See Lockwood v. Travelers Insurance Co.*, 179 Colo. 103, 498 P.2d 947 (1972); *Hamilton v. Hardy*, 37 Colo.App. 375, 549 P.2d 1099 (1976).

The transport note here was offered as evidence of a material fact, *i.e.*, the time of arrival of the nurse anesthetist. This entry is more probative on this point than the other evidence which the plaintiff was able to obtain. Furthermore, the record supports the trial court's implicit conclusion that the general purposes of the Colorado

Rules of Evidence and the interests of justice will best be served by admission of the statement into evidence.

This lawsuit was tried several years after Jeffrey Stevens was born. One of the primary reasons for admitting business/medical records is that they are roughly contemporaneous with the events they are recording, and as a consequence, they can be more accurate and reliable than evidence derived from memories which are years old and which can be strongly biased. Furthermore, there is no evidence indicating that the transport team nurse was biased. For these reasons, we conclude that the trial court correctly determined that this entry also met the requirements of 803(24). *See Kirkham v. Hickerson Bros. Truck Co.*, 162 Colo. 125, 425 P.2d 34 (1967).

## II.

■ Humana further contends that the trial court erred in not permitting cross-examination of the expert economist witness called by plaintiff concerning the effect of pre-judgment interest on a successful personal injury verdict. Defendant claims that the trial court's award of pre-judgment interest gave an improper windfall to the plaintiff. We disagree.

Section 13–21–101(1), C.R.S. (1987 Repl. Vol. 6A), states in pertinent part:

In all actions brought to recover damages for personal injuries sustained by any person ... it is lawful for the plaintiff in the complaint to claim interest on the damages alleged from the date said suit is filed ... after July 1, 1979, it is lawful for the plaintiff in the complaint to claim interest on the damages' claimed from the date the action accrued. When such interest is so claimed, *it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict of the jury, or found by the court, interest on such amount calculated at the rate of nine percent per annum on actions filed on or after July 1, 1975* ... (emphasis added)

Here, defendant argues that since a high percentage of the jury award was for future damages, *i.e.*, economic and medical expenses, which in turn were based on the testimony of plaintiff's economist, the award of pre-judgment interest was erroneous.

Specifically, defendant claims that the purpose of pre-judgment interest is to compensate the plaintiff for the loss of use of the money awarded by the jury from the date that the action accrued. It argues that a prevailing party is entitled to pre-judgment interest only because it has been deprived of the use of the amount awarded from the accrual date (usually date of the incident), until the judgment is entered. We disagree with this contention.

Section 13–21–101(1), C.R.S. (1987 Repl. Vol. 6A) does not differentiate for the purpose of awarding interest between an award of past and future damages. The language of § 13–21–101(1) requires the *court* to add 9% interest to any personal injury verdict. If, as here, the language and meaning of a statute are clear, we must enforce the statute as written. *Kern v. Gebhardt*, 746 P.2d 1340 (Colo.1987).

Furthermore, since the interest statute itself does not distinguish between future and past damage awards, in our view, the General Assembly did not intend that these concepts be applied. Moreover, when this statute was enacted in 1975, damages for past and future losses were routinely awarded in Colorado courts. We must therefore assume that the General Assembly intended to award pre-judgment interest in all cases in which a jury verdict award was made.

■ Assuming *arguendo* that the economist's calculations provided the basis for the jury's economic loss award, we also conclude that cross-examination on pre-judgment interest would have been improper because this award, like other personal injury awards, in theory could have been made as of the date the action accrued. In other words, the future economic loss calculations of the economist which were based on the date of trial do not result in a different total calculation of economic loss

for Jeffrey Stevens, and thus here, as in other personal injury cases, the plaintiff was deprived of this award until judgment was entered. Therefore, despite defendant's claim to the contrary, the plaintiff was deprived of the use of this money from the time the action accrued until the jury verdict was returned.

Moreover, as this court indicated in *Voight v. Colorado Mountain Club*, 819 P.2d 1088 (Colo.App.1991), the award of pre-judgment interest serves not only the purpose of compensating a party for the loss of use of money but is also used to encourage the settlement of cases both pre- and post-trial.

### III.

Humana next argues that the trial court erred in denying its motion for a new trial based on jury misconduct. Defendant claims that the jury verdict in favor of plaintiff was improperly based on extraneous information that one of the jurors obtained during the course of the trial. We perceive no error.

■ A new trial is not automatically required whenever a jury is exposed to extraneous information during trial or deliberations. *See United States v. Bruscino*, 687 F.2d 938 (7th Cir.1982).

■ A party seeking a new trial on the basis of a jury's improper exposure to extraneous information must establish that the information was revealed to the jury and that it had the capacity to influence the verdict. *Destination Travel, Inc. v. McElhanon*, 799 P.2d 454 (Colo.App.1990). Here, the trial court must determine whether there is a reasonable possibility that the extraneous information affected the verdict and thus prejudiced Humana. *Wiser v. People*, 732 P.2d 1139 (Colo.1987); *Gambrell v. Ravin*, 764 P.2d 362 (Colo. App.1988).

■ During this trial, upon returning from grocery shopping, the jury foreperson noticed information listing some of the symptoms of tuberous sclerosis printed on one of her grocery bags. Tuberous sclerosis is one of the disease processes suggested by defendant's experts as an alternative explanation for Jeffrey Stevens' cerebral palsy. It was discussed in some detail by several medical witnesses.

Defendant argues that the juror's exposure to this extraneous information, coupled with her providing the information to the jury, created, as a matter of law, a reasonable possibility that this verdict resulted from extraneous information.

In response to Humana's claim that there had been juror misconduct, the trial court held a hearing at which the jurors testified. At that hearing, one of the primary issues was whether the jury foreperson had improperly read, disseminated, and used the tuberous sclerosis information on the grocery bag and if there was a reasonable possibility that this extraneous information affected the jury verdict.

The outside of the grocery bag stated, in pertinent part, that tuberous sclerosis is:

"A Genetic Disease Which May Be Characterized By:

Mental Retardation

Tumors

Seizures

Skin Signs

White Spots

Red Bumpy Facial Rash

Growths on fingernails and toenails"

The evidence at the hearing indicated that none of the jurors remembered the jury foreperson detailing the information on the grocery bag. However, one of the jurors indicated that the foreperson had stated, prior to the completion of deliberations, that because of information she had learned, Jeffrey Stevens did not have tuberous sclerosis. However, other jurors either did not remember any comments by the foreperson about the extraneous tuberous sclerosis information or they remembered the subject was mentioned tangentially only after the jury had agreed on their verdict. The foreperson testified that she told the jurors after the jury verdict was reached that a grocery bag referred to tuberous sclerosis and that this child, in her opinion, did not have this disease.

In its findings of fact and conclusions of law, the trial court accepted the foreperson's version of the tuberous sclerosis incident and found that the belated mention of this tuberous sclerosis information did not detail the pertinent symptoms. Therefore, the court determined there was not a reasonable possibility that this extraneous information affected the verdict of the other jurors.

The trial court's order also noted that the foreperson stated she was aware of the jury instruction that she could only rely on evidence produced at trial in deciding the case and that she had followed this admonition. Relying in part on this evidence, the trial court implicitly concluded there was not a reasonable possibility that the information on the grocery bag had affected the foreperson's decision either.

Humana argues that, despite the trial court's resolution of these issues, this court should determine, as a matter of law, that there was juror misconduct in reading and disseminating the information on the grocery bag and that there is a reasonable possibility that the jury verdict was tainted by this extraneous information. Since we find that there is evidentiary support for the conclusions reached by the trial court, we disagree with Humana.

Here, the evidence at the court hearing showed that only the one juror observed the information on the grocery bag and that observation was for just a few seconds. Also, the bag and the information on it innocently came into the juror's possession. *See United States v. Castello*, 526 F.Supp. 847 (W.D.Tex.1981) (where juror was inadvertently exposed to extraneous information, the lack of juror misconduct is a relevant factor in determining if the verdict should be set aside).

Furthermore, the trial court, with record support, found that for the most part, the information about the tuberous sclerosis symptoms on the grocery bag was duplicative of other evidence properly admitted at the trial. *See Harrison v. Owen*, 682 F.2d 138 (7th Cir.1982); *United States v. D'Andrea*, 495 F.2d 1170 (3rd Cir.1974) (extraneous information which is duplicative of properly admitted evidence may not be prejudicial).

Also, the indication from the juror that she followed the court's instructions to consider only the evidence presented at trial militates in favor of its conclusion that the extraneous information had no prejudicial effect. *See Llewellyn v. Stynchcombe*, 609 F.2d 194 (5th Cir.1980); *United States v. Bagley*, 641 F.2d 1235 (9th Cir.1981) (indicating that an instruction telling the jury to consider only evidence admitted can be a factor in determining if the verdict should be set aside).

## IV.

 Humana finally argues that the trial court erred in having plaintiff's counsel draft the findings of fact and conclusions of law after the evidentiary hearing on juror misconduct. While we agree that it is the better practice for the trial court, if possible, not to delegate this responsibility to counsel, such practice does not warrant reversal of the trial court's findings and order. *See Uptime Corp. v. Colorado Research Corp.*, 161 Colo. 87, 420 P.2d 232 (1966). Furthermore, the trial court changed some of the plaintiff's proposed order, and this demonstrates that the court read, analyzed, and agreed with the remainder of the order. *Uptime Corp. v. Colorado Research Corp., supra.*

Accordingly, we perceive no error in the trial court's rejection of defendant's motion for new trial because of juror misconduct.

Judgment affirmed.

TURSI and RULAND, JJ., concur.