ESTATE OF Michelle M. WRIGHT, by and through the Personal Representative of the Estate, Frank J. WRIGHT; Frank J. Wright, individually, on behalf of himself, and Claire Wright, the Parents of Michelle M. Wright, Plaintiffs–Appellees,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION, Defendant–Appellant.

No. 00CA1474.

Colorado Court of Appeals, Div. V.

Nov. 8, 2001.

Certiorari Denied Sept. 3, 2002.

Overturf & McGath, P.C., Brandon P. Hull, Dawn–Carol Harris, Kissinger & Fell-man, P.C., Kenneth S. Fellman, G. Harris Adams, Denver, CO, for Plaintiffs–Appellees.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, CO; Johnson & Ayd, P.C., James D. Johnson, Denver, CO, for Defendant–Appellant.

Opinion by Judge KAPELKE.

In this action arising from the death of Michelle M. Wright (decedent), defendant, United Services Automobile Association (USAA), appeals the judgment in favor of plaintiffs, decedent's parents and her estate. USAA challenges the trial court's ruling that, because decedent died as a result of a "felonious killing," the statutory cap on recovery of noneconomic damages does not apply and USAA is therefore liable for the maximum amount of uninsured motorist (UM) coverage under its policy. We affirm.

Decedent was killed in a head-on automobile collision. The driver of the car that struck the car in which decedent was a passenger was uninsured. In this action, plaintiffs asserted a wrongful death claim against the uninsured driver and also claims against USAA based on the UM coverage of the policy that insured decedent. By counterclaim, USAA sought a declaratory judgment that its liability was limited to $250,000, the statutory cap on noneconomic damages under § 13–21–203, C.R.S.2001.

After the trial court denied a motion for summary judgment filed by USAA, plaintiffs filed a motion pursuant to § 15–11–803(7), C.R.S.2001, to determine whether the elements of "felonious killing" of the decedent had been established and whether the statutory cap was therefore inapplicable.

Pursuant to plaintiffs' motion, and based on undisputed facts, the court found that the driver's conduct satisfied the elements of manslaughter and thus constituted a felonious killing as defined in § 15–11–803(1)(b), C.R.S.2001. Ruling that the exception to the statutory cap on noneconomic damages under § 13–21–203 therefore applied, the court entered judgment against USAA for the unpaid balance of the $1.1 million policy limit provided for UM coverage.

## I.

USAA first contends that the "felonious killing" exception to the statutory cap on recovery of damages for noneconomic loss in a wrongful death action does not apply where, as here, the tortfeasor pled guilty to vehicular homicide under § 18–3–106, C.R.S. 2001. We disagree.

The interpretation of a statute is a question of law which we review de novo. In interpreting statutes, we must give full effect to the intent of the General Assembly. To determine that intent, we look first to the words used, which must be read in context and accorded their plain and ordinary meaning. *Minch v. Town of Mead,* 957 P.2d 1054 (Colo.App.1998).

Recovery of damages for wrongful death is allowed under § 13–21–202, C.R.S.2001. With respect to damages for noneconomic loss or injury, however, § 13–21–203(1), C.R.S.2001, provides that the amount of recovery is limited to $250,000 unless the "wrongful act, neglect, or default causing death constitutes a felonious killing, as defined in section 15–11–803(1)(b), C.R.S., and as determined in the manner described in section 15–11–803(7), C.R.S.," in which event there is no limitation.

As noted in its title, § 15–11–803, C.R.S. 2001, the so-called "slayer statute," governs the effect of a homicide on "intestate succession, wills, trusts, joint assets, life insurance and beneficiary designations."

Section 15–11–803(1)(b) provides:

"Felonious killing", *except as provided in subsection (7) of this section,* is the killing of the decedent by an individual who, as a result thereof, is convicted of, pleads guilty to, or enters a plea of nolo contendere to the crime of murder in the first or second degree or manslaughter, as said crimes are defined in sections 18–3–102 to 18–3–104, C.R.S. (emphasis added)

Subsection 7 of that statute provides, in pertinent part: "*Notwithstanding the status or disposition of a criminal proceeding,* a court of competent jurisdiction, at any time, upon the petition of an interested person, shall determine whether, by a preponderance of evidence standard, each of the elements of felonious killing of the decedent has been established." Section 15–11–803(7), C.R.S. 2001 (emphasis added).

Here, the uninsured driver pled guilty to DUI vehicular homicide under § 18–3–106, a class 3 felony. Nonetheless, upon the petition of plaintiffs as interested persons, the court found that the elements of manslaughter had been established by a preponderance of the evidence. Relying on undisputed facts, including the driver's high blood alcohol level, failure to turn on his headlights, and driving into oncoming traffic, the court ruled that the driver's conduct "recklessly cause[d] the death of another person," which is the definition of manslaughter under § 18–3–104(1)(a), C.R.S.2001. Given the undisputed facts, we agree that the plain language of § 15–11–803(7) permitted the trial court to make this determination.

That the driver was convicted, upon a plea, of vehicular homicide does not alter our conclusion. The language of § 15–11–803(7) is clear and unambiguous. It states that "[n]otwithstanding the status or disposition of a criminal proceeding," a court may independently determine whether, under a preponderance of the evidence standard, the elements of a felonious killing have been met.

USAA contends that this language should be interpreted to mean that the court may make such a determination only if there has not yet been a conviction of first or second degree murder or manslaughter or if the decedent's killer was acquitted of one of the listed crimes. According to USAA, the person causing the death must at least have been charged with one of the enumerated crimes before the conduct can be considered a felonious killing for the purpose of the exception to the cap on recovery of noneconomic damages for wrongful death.

However, the plain language of the statute does not require such a restrictive reading. The first sentence of § 15–11–803(7) provides that a judgment of conviction, guilty plea, or plea of nolo contendere "conclusively establishes" that the person is a felonious killer for purposes of this section. However, the next sentence provides that "[n]otwithstanding the status or disposition of a criminal proceed-

ing," a court of competent jurisdiction may make a civil determination whether the elements of felonious killing have been established by a preponderance of the evidence. The language is broad enough to allow such a determination even where the person was acquitted or was convicted of a lesser offense, or where no criminal proceeding was ever initiated.

Our conclusion is supported by *Bernstein v. Rosenthal*, 671 P.2d 979 (Colo.App.1983), which involved interpretation of a predecessor to § 15–11–803, Colo. Sess. Laws 1973, ch. 451, § 153–2–803(5) at 1564 (formerly codified as § 15–11–803(5)). In *Bernstein*, a husband who was the beneficiary of his wife's insurance policy had killed her and then committed suicide. A division of this court determined that even though there had been no criminal proceeding, the trial court could nonetheless find, based on a preponderance of the evidence, that the husband was guilty of first or second degree murder or manslaughter of his spouse and that the husband's estate was thus precluded from recovering under the policy.

Further, we are not persuaded that a different outcome is required because the death here was caused by the reckless operation of a motor vehicle. To prove a felonious killing for purposes of § 15–11–803, it need only be shown that the conduct of the person who caused the death meets the elements of first or second degree murder or manslaughter. There is no basis for concluding that the elements of manslaughter are not present where the instrumentality causing the death was a motor vehicle.

■ To obtain a conviction on a charge of manslaughter, the prosecution must show that the accused's conduct caused the death of another and that the accused: (1) consciously disregarded (2) a substantial and (3) unjustifiable risk that he or she would (4) cause the death of another. *People v. Hall*, 999 P.2d 207 (Colo.2000). Those elements were proven here.

USAA argues that the exception to the damages cap does not apply here as the uninsured driver could not have been convicted of manslaughter, because there is a specific criminal statute, § 18–3–106, governing reckless vehicular homicide. Even if we were to assume that enactment of that statute was somehow intended to preclude a conviction for manslaughter where a motor vehicle was involved, the exception to the cap on statutory damages does not require a showing that a conviction was or could have been obtained. Rather, it need only be shown that the conduct satisfies the statutory elements of manslaughter.

■ Finally, we perceive no reason to alter our conclusion based on the fact that this case involves the contractual liability of an insurer rather than the tort liability of the person who caused the death. The purpose of uninsured and underinsured motorist coverage under § 10–4–609, C.R.S.2001, is to compensate an innocent insured fully for loss caused by financially irresponsible motorists, subject to the policy limits, and to place the insured in the same position as if the uninsured or underinsured motorist had liability coverage equal to that of the insured. *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167 (Colo. 2001); *State Farm Mut. Auto. Ins. Co. v. Tye*, 931 P.2d 540 (Colo.App.1996).

USAA, as the UM carrier, contractually agreed to place its insured in the same position as if the uninsured tortfeasor had liability insurance. The policy states: "We will pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle." Because plaintiffs would be legally entitled to recover uncapped noneconomic damages from the driver who caused decedent's death or from the driver's liability insurer, they are entitled to recover the amount of such damages from USAA, subject to policy limits.

Accordingly, we find no error in the trial court's determination that decedent's death was caused by a felonious killing and that the statutory cap on noneconomic damages therefore does not apply.

## II.

■ Relying on *Lira v. Shelter Ins. Co.*, 913 P.2d 514 (Colo.1996), USAA next contends that the felonious killing exception to

the damages cap is intended to punish the killers by subjecting them to open-ended liability and that subjecting insurers to such liability thus violates Colorado's public policy prohibiting insurance carriers from providing coverage for punitive damages. We reject the contention.

The award at issue here was based on plaintiffs' actual compensatory damages, not on punitive damages. Further, rather than authorizing recovery of punitive damages, the provision in § 13–21–203 simply removes the limitation on noneconomic damages where the death resulted from a felonious killing.

We note that § 13–21–203 governing recovery for wrongful death was recently amended to allow recovery of punitive damages "in addition to the actual damages," where the death is attended by circumstances of fraud, malice, or willful and wanton conduct. Colo. Sess. Laws 2001, ch. 128, § 13–21–203(3)(7) at 377–78. This amendment evidences a legislative recognition that compensatory damages for noneconomic loss are distinct from punitive damages.

We thus reject USAA's contention that the trial court's judgment requires USAA to pay punitive damages and is therefore in violation of public policy.

Accordingly, the trial court properly determined that USAA's liability under the UM coverage is not limited by the $250,000 statutory cap on recovery of noneconomic damages.

The judgment is affirmed.

CASEBOLT and VOGT, JJ., concur.